**ELK GROVE FIREFIGHTERS LOCAL NO. 2340 et al., Plaintiffs,**

v.

**Charles A. WILLIS, Village Manager of the Village of Elk Grove, et al., Defendants.**

**No. 74 C 2412.**

United States District Court, N. D. Illinois, E. D.

Sept. 18, 1975.

---

Kleiman, Cornfield & Feldman, Chicago, Ill., for plaintiffs.

R. Theodore Clark, Jr., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Edward C. Hofert, Hofert & Samelson, DesPlaines, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This case is brought by two unions: the International Association of Firefighters, AFL–CIO and its local affiliate, Elk Grove Firefighters Local No. 2340, against certain officials of the Village of Elk Grove. The Village officials have forbidden captains and lieutenants of the Elk Grove fire department to belong to any union which also has as members rank and file firefighters. The plaintiff unions, which had as members both firefighters and officers of the Elk Grove fire department at the time the Village officials promulgated this policy, claim that this policy infringes the First Amendment freedom of association of the officers. They bring this action under 42 U.S.C. § 1983, seeking a declaration that any employee of the Elk Grove fire department, regardless of rank, can join them, an injunction against any further interference with membership of any firefighter or officer in plaintiff unions and damages for union dues lost because of the defendant officials' actions.

Defendants filed a motion to dismiss the complaint on the grounds that plaintiff unions lacked standing to assert the rights of the officers, that this court lacked jurisdiction over this action and that the complaint failed to state a cause of action. That motion was denied in a memorandum opinion filed January 29, 1975. 391 F.Supp. 487 (N.D.Ill. 1975). The sequence of events which led up to this action is described in that opinion.

Defendants have now answered and both sides have moved for summary judgment. Plaintiffs ask for judgment on the pleadings and defendants have supported their motion with the affidavit of Allen Hulett, Fire Chief of Elk Grove Village.

■ Neither motion is to be granted, of course, unless there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). All parties agree that there is no genuine issue as to any material fact. The question on these motions is whether, as a matter of law, the Village officials' prohibition of membership by captains and lieutenants in plaintiff unions on the grounds that the unions also represent rank and file firefighters infringes the First Amendment rights of the officers. For the reasons set forth below, this court finds that the prohibition is constitutionally valid.

### I.

■ There can be no doubt that First Amendment rights are affected by the actions of the Village officials. Whatever doubts there may once have been, it is now uncontrovertible that the First Amendment's freedom of association extends to economic associations such as unions. *Thomas v. Collins,* 323 U.S. 516, 531, 65 S.Ct. 315, 89 L.Ed. 430 (1945). Nor is there any doubt that public employees as well as private enjoy First Amendment protection of their union associations. *McLaughlin v. Tilendis,* 398 F.2d 287 (7th Cir. 1968); *Am. Fed. of State, Co., & Mun. Emp. v. Woodward,* 406 F.2d 137 (8th Cir. 1969). Public employees do not waive their constitutional rights by virtue of their status as public employees. *Elfbrandt v. Russell,* 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

Broad as the protections of the First Amendment are, however, they are not without limit. *See Civil Service Comm. v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), and *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), upholding severe restrictions on the partisan political activities of federal and state governmental employees on the grounds that the restrictions are necessary to insure an efficient civil service dedicated to public rather than partisan ends. *See*

*also Clark v. Holmes,* 474 F.2d 928 (7th Cir. 1972), discussing the limits on the freedom of a teacher at a public university to teach as he likes.

■■■ The determination of what limits may constitutionally be put on the First Amendment activities of public employees requires a balancing of the public interest asserted as justification for the limitation against the interests of the individuals or groups whose rights are being curtailed. Where the state seeks to limit First Amendment freedoms it must show (1) that a substantial, legitimate state interest (2) will in fact be served, and (3) that the limit imposed on First Amendment activities is the least drastic restriction of constitutional rights which will accomplish the state's purpose. *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

## II.

The interest asserted by the Village officials in this case is the need for a disciplined, efficient fire department. They claim that the lieutenants and captains are supervisory personnel for whom membership in a union which exists for the purpose of representing rank and file firefighters, whom the officers are supposed to supervise, concerning wages, hours and conditions of employment would present a conflict of interest. This, it is argued, would impair the efficiency of the fire department which plays a crucial role in safeguarding the lives and property of the citizens of Elk Grove village.

■■■ Clearly, an efficient fire department is a legitimate and substantial state interest. *Civil Service Comm. v. National Association of Letter Carriers, supra,* and *Broadrick v. Oklahoma, supra,* establish that the efficiency of pub-

lic employees generally is a legitimate and substantial governmental interest. This interest is particularly strong with respect to firefighters because of the need for them to act quickly and effectively to prevent grievous loss of life and property.

The question of whether the restrictions at issue in this case will sufficiently further this governmental interest to warrant limitation of First Amendment rights might be a difficult one but for some recent legislation and case law on precisely the issue of the impact of joint rank and file—supervisor unions on efficiency and discipline. Section 14(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 164(a), provides that no employer subject to that Act can be compelled under any law, federal, state, or local, to deal with supervisors as members of collective bargaining units.[1] This provision, added by the Taft-Hartley Amendments of 1947, reflects a strong congressional judgment that supervisor membership in unions is inimical to efficiency. *See Beasley v. Food Fair of North Carolina,* 416 U.S. 653, 658–662, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). The LMRA is inapplicable to public employers, but § 14(a) represents a considered congressional judgment of which this court takes notice.

The validity of this judgment in First Amendment considerations was implicitly recognized by the Supreme Court in *Beasley, supra,* where the Court reversed, on the basis of § 14(a), a state court judgment against an employer who had fired a supervisor for union membership. The judgment was based on the North Carolina right-to-work law, which creates a cause of action in damages for any person discharged for union activities.

---

1. For the purposes of § 14(a), "supervisor" is defined according to § 2(11) of the LMRA, 29 U.S.C. § 152(11): "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

The Court held that § 14(a) served to free all employers subject to the LMRA from any liability for discharges of supervisors for union activities. Although the Court did not explicitly consider First Amendment issues in *Beasley,* its decision recognized industrial efficiency and discipline as a substantial interest which is furthered by restrictions on supervisory unionization. While § 14(a) does not apply to public employers such as Elk Grove Village, that section is subject to the strictures of the First Amendment insofar as it overrides state laws which protect the organizational rights of supervisors.[2]

The New York Court of Appeals found the rationale of § 14(a) constitutionally applicable to public employers in *Shelofsky v. Helsby,* 32 N.Y.2d 54, 343 N.Y.S.2d 98, 295 N.E.2d 774 (1973), *appeal dismissed* 414 U.S. 804, 94 S.Ct. 60, 38 L.Ed.2d 41 (1973). *Shelofsky* considered a First Amendment challenge to a section of the New York Civil Service Law[3] which forbids "managerial" public employees to belong to any union which also represents lower echelon public employees. The court upheld the statute, saying:

"The exclusion of supervisory personnel from collective bargaining rights enjoyed by employees is not a new concept. [Citation omitted.] In 1947, the Taft-Hartley Act (Labor Management Relations Act) amended the National Labor Relations Act in part to exclude 'supervisors' from collective bargaining rights enjoyed by private employees generally . . . . The objective of the Taft-Hartley Act, held permissible in [*NLRB v. Budd Mfg. Co.,* 169 F.2d 571, 578 (6th Cir. 1958)], was to assure the employer of a loyal and efficient cadre of supervisors and managers independent from the rank and file. [Citation omitted.] That objective is equally applicable to the State, as an employer." 32 N.Y.2d at 59–60, 343 N.Y.S.2d at 101, 295 N. Ed.2d at 775.

The treatment of § 14(a) of the LMRA in *Beasley* and of the New York Civil Service Law in *Shelofsky,* both of which held that limitations of supervisory union activity is a legitimate means of achieving the important governmental goal of an efficient, effective work force, public or private, is applicable to this case. There appears to be no controversy that the lieutenants and captains are supervisors.[4] The duties and responsibilities of the supervisory officers are detailed in the uncontroverted affidavit

---

2. *See Railway Employees Department v. Hanson,* 351 U.S. 225, 232, 76 S.Ct. 714, 718, 100 L.Ed. 1112 (1956), which held that union shop contracts entered into pursuant to § 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152, Eleventh, which made such agreements legal notwithstanding any state right to work laws which might otherwise preclude them, were, for constitutional purposes, governmental action. "If private rights are being invaded, it is by force of an agreement made pursuant to federal law which expressly declares that state law is superseded. [Citation omitted.] . . . The enactment of the federal statute authorizing union shop agreements is the governmental action on which the Constitution operates, though it takes a private agreement to invoke the federal sanction."

3. The New York Civil Service Law, § 214 provides:
"No managerial or confidential employee, as determined pursuant to subdivision seven of section two hundred one of this article, shall hold office in or be a member of any employee organization which is or seeks to become pursuant to this article the certified or recognized representative of the public employees employed by the public employer of such managerial or confidential employee.
§ 201 (subd. 7) (a) defines managerial personnel as " . . . persons . . . (ii) who may reasonably be required on behalf of the public employer to . . . have a major role in the administration of agreements or in personnel administration provided that such a role is not of a routine or clerical nature and requires the exercise of independent judgment.

4. Defendants allege in their answer (p. 5), and their memorandum in support of defendants' motion for summary judgment (p. 2), and plaintiffs seem to admit in their memorandum in opposition to defendants' motion for summary judgment (pp. 1, 2) that the lieutenants and captains are supervisors.

of Fire Chief Allen Hulett, which states as follows:

"1. That I am the Chief of the Fire Department of the Village of Elk Grove Village and have held said position since January 1, 1969. . . .

"2. That as of April 15, 1975, the Fire Department of the Village of Elk Grove Village consists of one Chief, three Captains, 15 Lieutenants, 53 Fire Fighters, and one engineer. There are also six civilians who serve in the Fire Department as well. (sic)

"3. That each of the three Captains is in charge of one shift, and pursuant, to the Rules and Regulations of the Fire Department, is 'held strictly responsible for discipline, conduct and efficiency of all members of the department during the entire shift.'

4. That each of the lieutenants supervises a company and, pursuant to the Rules and Regulations of the Fire Department, is responsible 'for the efficient operation of the company', is charged with the responsibility to 'preserve the discipline of his company and instruct the members in their duties,' and 'in the absence of a superior officer, exercise[s] the same duties and [has] the same powers as devolve upon the Captain.'

5. That on May 14, 1974, I issued an officer's general order directing that Captains and Lieutenants would serve in the capacity of Acting Chief of the Fire Department of the Village of Elk Grove Village in the absence of the Chief.

6. That when Captains or Lieutenants serve in the capacity of Acting Chief of the Department they have all the duties and responsibilities that I would have as Chief of the Fire Department of the Village of Elk Grove Village.

7. That Captains and Lieutenants are responsible for making written performance evaluations of the Fire Fighters under their supervision. . . . .

8. . . . . ."

These duties present precisely the conflict of interests which the limits on supervisory unionization are designed to avoid. Lieutenants and captains are hired as agents of the Village to supervise, discipline and evaluate the rank and file firefighters. "Management, like labor, must have faithful agents." *Beasley*, 416 U.S. at 660, 94 S.Ct. at 2027. To permit the officers to join and become subject to the discipline of a union in which they are outnumbered by firefighters by greater than a three-to-one ratio could deprive the Village of the undivided loyalty of the officers to which it is entitled. *Cf. Florida Power & Light v. IBEW*, 417 U.S. 790, 805–813, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974).

As one example of the sort of conflict likely to arise, an officer, as Acting Chief, could be in a position to order the firemen to work overtime. The union could be taking a position in opposition to involuntary overtime. An officer who is a member of the union would be caught in a clash between his duty as Acting Chief to make the firefighters work the overtime he deems necessary for effective fire protection for the Village and his duty as a union member to pursue the union's ends. Either way he acts he will breach his duty to the Village or to the union. It is to avoid such conflicts that supervisory unionization may be curtailed.

Plaintiff unions dispute that any legitimate interest is served by the Village policy at issue here, asserting that this is a "pure membership" case, the policy being analogous to one prohibiting common membership in the Elks. This is a rather disingenuous argument. Plaintiffs themselves allege in their complaint that,

". . . Local No. 2340 has been organized and exists for the purpose of representing its membership in connection with their hours, wages and working conditions." (Complaint, ¶ 3.)

In light of the purpose of the union, it is improbable in the extreme that the sorts of conflicts which the prohibition on common membership prevents would not arise were membership unrestricted. The decisions of the Village officials which affect the working conditions of the firefighters, an issue with which the union is admittedly concerned, can only be implemented through the officers which the unions seek to bring into their ranks. Practically the only circumstance in which a conflict of interest would fail to arise would be if there were no conflict between the Village officials and the firefighters union over any aspect of working conditions, a rather unlikely eventuality.

▇ The Village cannot be told to wait and see whether any conflict develops in fact. The creation of a common union composed of rank and file firefighters and their superior officers poses a sufficiently serious threat of ineffective supervision based upon divided loyalties to warrant preventive action.

Finally, there can be no doubt that the actions of the defendant Elk Grove Village officials are the least restrictive means of effecting the substantial, legitimate governmental purpose of an efficient fire department. As discussed above, surveillance by the officials from above to prevent less than complete supervisor loyalty would be impracticable and ineffective. Given that there must be some sort of limitation on the associational rights of the fire lieutenants and captains, the rule promulgated by the defendants is as narrow as possible.

The officers are not precluded from forming or joining a union which does not represent rank and file firemen. In this respect the rule is less stringent than the complete prohibition of supervisory union membership allowed in the private sector by § 14(a) of the LMRA. The *only* union closed to the officers is one which also represents rank and file firefighters whom it is the officers' duty to supervise. The limitation on union activity is clearly and precisely drawn to achieve the Village officials' legitimate ends. It is not overbroad or vague. *Compare Police Officers' Guild, National Union of Police Officers, AFL–CIO v. Washington,* 369 F.Supp. 543, 550–553 (D.D.C.1973); *Melton v. City of Atlanta,* 324 F.Supp. 315 (N.D.Ga.1971); and *Atkins v. City of Charlotte,* 296 F.Supp. 1068 (W.D.N.C.1969), all striking down blanket proscriptions on police and firefighter union activity on overbreadth and vagueness grounds.[5]

In sum, though the actions of the defendants have undeniably trenched on an area generally protected by the First Amendment's guarantee of freedom of association, the restrictions at issue here effectively serve a legitimate and substantial public interest by an unambiguous policy narrowly drawn to achieve that end. In such circumstances this limitation of freedom of association is not repugnant to the First Amendment.

Therefore, plaintiffs' motion for summary judgment is denied; defendants' motion for summary judgment is granted, and the cause is dismissed.

---

5. Plaintiffs cite *Orr v. Thorp,* 308 F.Supp. 1369 (S.D.Fla.1969), which struck down a Florida statute forbidding supervisory employees of the Dade County Schools to join any teachers union as unconstitutional in support of their argument. The first ground of the decision in *Orr,* however, was that the limitation applied nowhere else in the state except Dade County and, consequently, violated the equal protection clause of the Fourteenth Amendment. That ground is, of course, inapplicable here. The court did briefly state its opinion that the statute violated the First Amendment as well, but also pointed out that the state had presented no defense at all to plaintiffs' First Amendment claims. To the extent that this opinion is inconsistent with that in *Orr,* I decline to follow it.