Public Employee Labor Relations Board
No. 79-050

CITY OF CONCORD

v.

PUBLIC EMPLOYEE LABOR RELATIONS BOARD

STATE OF NEW HAMPSHIRE

October 12, 1979

*Paul F. Cavanaugh,* city solicitor, by brief and orally, for the city of Concord.

*Dunn & Hilliard,* of Concord (*Russell F. Hilliard* orally), for the intervenor, Local 1045 of the International Association of Firefighters.

The State of New Hampshire filed no brief.

PER CURIAM.   Appeal by the city under RSA ch. 541 from a denial by the Public Employee Labor Relations Board (hereinafter PELRB) of its petition for a declaratory judgment to invalidate the choice of a negotiating team by Unit B of Local 1045 of the International Association of Firefighters, its exclusive bargaining representative. RSA 273:11 IV.

By order of the PELRB, the Concord Fire Department was comprised of two bargaining units as follows:

Unit "A": Firefighters; Dispatcher; Fire Alarm Lineman; Fire Prevention Inspector; and Firefighter Mechanic.

Unit "B": Lieutenants, Chief Mechanic; Fire Department; Fire Alarm Superintendents; Assistant Fire Prevention Officer; Fire Prevention Officer; and Training Officer.

The two bargaining units were certified in conformity with the provision of RSA 273-A:8 II, which provides in part as follows:

Persons exercising supervisory authority involving the significant exercise of discretion may not belong to the same bargaining unit as the employees they supervise.

This controversy arose when Unit B (supervisory employees) chose, as members of their contract negotiating team, a fire lieutenant (member of Unit B) and two firefighters (members of Unit A).

The city maintains that if the above provisions are to have meaning they must be interpreted as expressing a legislative intent that a supervisory unit cannot designate nonsupervisory employees among its negotiating representatives. The city argues that there would be no point to mandate separate bargaining units for supervisors and for firefighters if negotiating, the primary function of these units, was permitted to be conducted by teams comprised jointly of supervisors and firefighters.

The basis of the requirement of RSA 273-A:8 II, that supervisory personnel must not be in the same unit with the rank-and-file firefighters, is to avoid conflicts between the two groups because of the differing duties and relationships which characterize each group. *See Neb. Ass'n of Pub. Emp. v. Neb. Game and Parks Comm.*, 179 Neb. 178, 247 N.W.2d 449 (1976); *Elk Grove Firefighters Local No. 2340 v. Willis*, 400 F. Supp. 1097, 1103 (N.D. Ill. 1975).

The supervisors in Unit B are assigned the duty to supervise, discipline, and evaluate the rank-and-file firefighters in Unit A. *See Beasley v. Food Fair of North Carolina, Inc.*, 416 U.S. 653, 660 (1974). The city argues that having two firefighters constituting the three-member team negotiating for the supervisors could influence and hinder the latter in the performance of their assigned duties. Favorable results of negotiations for the supervisors would depend in large measure on the two firefighters they are charged with supervising. The resulting conflicting interests, the city argues, would endanger the overall purpose of RSA ch. 273-A to foster harmonious and cooperative relations between public employers and their employees. RSA 273-A:1.

The intervenors properly argue that under the National Labor Relations Act (NLRA) and similar statutes, neither the employer nor the union has any right to determine the individuals who will personally conduct the negotiations for the other party. *General Electric Co. v. NLRB*, 388 F.2d 213, 214 (6th Cir. 1963). Furthermore, unless the presence of specific negotiators would prevent good-faith collective bargaining, the employer cannot refuse to negotiate with the chosen union representatives. *Id.*

It must be noted, however, that under the NLRA "the term 'employee' . . . shall not include . . . any individual employed as a supervisor." 29 U.S.C.A. § 152(3) and (11). The cases under that act must be read in that light. Our legislature did not exclude supervisors as such from its definition of "Public Employees." RSA 273-A:1 IX. However, it placed the restriction on supervisory employees that they "may not belong to the same bargaining unit as the employees they supervise." RSA 273-A:8 II.

The city argues that RSA ch. 273-A, read as a whole, leads to the conclusion that the legislature intended not only that the supervisors and the firefighters were to be in separate bargaining units, but that there should be no·commingling of members on their negotiating teams. *Cf. Blue Mountain Forest Association v. Town of Croydon*, 119 N.H. 202, 204, 400 A.2d 55, 57 (1979) (statute must be read as a whole). We agree.

This court has recognized that the legislature has vested the PELRB with primary authority to define and interpret the terms and provisions of RSA ch. 273-A. *In re Nashua Ass'n of School Principals*, 119 N.H. 90, 92, 398 A.2d 832, 833 (1979). However, our decisions leave no doubt that this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *See, e.g., Keene State College Ed. Ass'n v. State*, 119 N.H. 1, 3, 396 A.2d 1099, 1101 (1979); *State v. Mullen*, 119 N.H. 703, 709, 406 A.2d 698, 701 (1979).

We hold that RSA ch. 273-A as a whole, and especially section 8 II, was intended to keep supervisory personnel separate from the rank and file, not only by requiring that their members be in separate bargaining units, but also, as a logical consequence, that they not be allowed to commingle on each other's negotiating teams.

In deciding otherwise, the PELRB made an error of law and its decision must be set aside. RSA 541:13. The city therefore properly refused to negotiate with a negotiating team for Unit B composed of two firefighters from Unit A and one member of Unit B.

*So ordered.*