Public Employee Labor Relations Board
No. 86-053

## APPEAL OF MANCHESTER BOARD OF SCHOOL COMMITTEE

(New Hampshire Public Employee Labor Relations Board)

March 6, 1987

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Alan Hall* and *Robert A. Casassa* on the brief, and *Mr. Hall* orally), for the Manchester Board of School Committee.

*James F. Allmendinger*, staff attorney, NEA-New Hampshire, of Concord, by brief and orally, for the Manchester Education Association.

*Clark, Cook & Molan P.A.*, of Concord (*Robert T. Clark* on the brief), by brief for the Professional Firefighters Association of New Hampshire, AFL–CIO, CLC, as *amicus curiae*.

*Backus, Meyer & Solomon*, of Manchester (*Jon Meyer* on the brief), by brief for the New Hampshire Association of School Principals, as *amicus curiae*.

BROCK, C.J.   The underlying issue in this case is whether a group of school principals, certified as a bargaining unit under RSA 273-A:8, II by the New Hampshire Public Employee Labor Relations Board (the PELRB), may be represented by the same union representative as the teachers whom they supervise. The PELRB ruled that they could, and after a representative election held on September 26, 1985, the PELRB formally certified the Manchester Education Association (the Association), also the teachers' representative, as the representative of the school principals.

The Manchester Board of School Committee (the School Committee) appeals from the PELRB's certification decision, claiming *inter alia* that it is erroneous as a matter of law because of the inherent conflicts of interest that exist in such an arrangement. Specifically, the School Committee argues that the Association's status as exclusive representative for both supervisory and non-supervisory personnel is contrary to RSA 273-A:8, II and would lead to actual and potential conflicts of interest and/or a division of loyalties between the Association and the principals and teachers.

We have stated on numerous occasions that the PELRB is vested with the authority to initially define and interpret the terms of RSA chapter 273-A. *Appeal of Town of Pelham*, 124 N.H. 131, 134, 469 A.2d 1295, 1297 (1983); *Appeal of City of Concord*, 123 N.H. 256, 257, 459 A.2d 285, 286 (1983). However, it is well-established that "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *City of Concord v. PELRB*, 119 N.H. 725, 727, 407 A.2d 363, 364 (1979). A ruling made by the PELRB will not be disturbed unless the appealing party meets its burden of showing that the PELRB's determination was erroneous as a matter of law, or that it was unjust or

unreasonable. *Appeal of Internat'l Assoc. of Firefighters,* 123 N.H. 404, 408, 462 A.2d 98, 101 (1983).

RSA 273-A:8, II explicitly prohibits "[p]ersons exercising supervisory authority involving the significant exercise of discretion [from belonging] to the *same bargaining unit* as the employees they supervise." (Emphasis added.) In *City of Concord v. PELRB, supra* at 727, 407 A.2d at 364, we further interpreted RSA chapter 273-A as a whole, and § 8, II in particular, as requiring that supervisory personnel be kept separate from the employees they supervise, not only by maintaining separate bargaining units, but also by refraining from commingling in the *same negotiating teams.* In the present appeal, the School Committee urges us to further interpret RSA 273-A:8 as prohibiting supervisors from being represented by the same union that is already representing the rank-and-file employees whom they supervise.

In adopting RSA chapter 273-A, the legislature declared that "it is the policy of the state to foster harmonious and cooperative relations between public employers and their employees and to protect the public by encouraging the orderly and uninterrupted operation of government." Laws 1975, 490:1 (statement of policy). With this purpose in mind, and because we agree with the statement of the Nebraska Supreme Court that "[t]o permit supervisory personnel to retain the same bargaining agent as the employees' union would be tantamount to permitting them to enter the same bargaining unit," *Nebraska Ass'n of Pub. Emp. v. Nebraska Game & Parks Commission,* 197 Neb. 178, 180, 247 N.W.2d 449, 450 (1976), we hold that supervisory personnel may not retain the same exclusive representative as the rank-and-file employees they supervise.

In *City of Concord v. PELRB,* 119 N.H. at 726, 407 A.2d at 364, we recognized that the basis of the requirement of RSA 273-A:8, II, that supervisory personnel not be in the same unit with the rank-and-file, was "to avoid conflicts between the two groups because of the differing duties and relationships which characterize each group." Giving logical effect to the "inten[t] to keep supervisory personnel separate from the rank and file," *id.* at 727, 407 A.2d at 364, we held that supervisory and non-supervisory personnel should "not be allowed to commingle on each other's negotiating teams." *Id.* In the present case, we see the same potential for conflicts of interest arising due to the differing duties and relationships of the groups.

At oral argument, counsel for the Association conceded that there was the theoretical potential for conflicts of interest under such an arrangement, but argued that the absence of conflicts of interest in actual practice should be controlling. We reject this argument. Even

if it is true that the Manchester school system has generally functioned well and has experienced good relations between its principals and teachers, it is not necessary for us to sit by and "allow events to unfold to the extent that the disruption of the [school] and the destruction of working relationships is manifest before taking action." *Vicksburg Firef. Etc. v. City of Vicksburg, Miss.*, 761 F.2d 1036, 1040 (5th Cir. 1985) (citing *Connick v. Myers*, 461 U.S. 138, 152 (1983)). To the contrary, "[a]n identity of interests on the part of supervisors with the rank and file poses a significant threat that the loyalties of the supervisors will be divided and that consequently the discipline and effectiveness of [the school system] will be impaired," *Vicksburg supra*, thus warranting preventive action. *See Germann v. City of Kansas City*, 577 S.W.2d 54, 56 (Mo. Ct. App. 1978).

One such example of an inherent conflict of interest was recognized in *Elk Grove Firefighters Local No. 2340 v. Willis*, 400 F. Supp. 1097 (N.D. Ill. 1975), *aff'd unpublished order*, 539 F.2d 714 (7th Cir. 1976). In *Elk Grove*, the court noted that an inherent conflict of interest exists where a union takes a position against involuntary overtime and a supervisory official decides that such overtime is necessary for efficient operation of the department. *Elk Grove, supra* at 1102, *Germann, supra* at 56. A conflict of this kind is not out of the realm of possibility in the Manchester school system.

■ The Association further alleges that if joint representation is prohibited in this case, we will be impinging upon the right of the principals to join the labor union of their choice. In effect, however, our decision precludes principals from choosing a particular representative, the one already chosen by the teachers. The principals are free to choose any other bargaining representative. We conclude that this limitation on their ability to choose a representative is reasonable in view of the purpose and mandates of RSA chapter 273-A.

The PELRB's certification order is vacated and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

BATCHELDER, J., concurred specially; the others concurred.

BATCHELDER, J., concurring specially: I concur in the result because it is a legally and logically defensible construction of a statute which regulates this field but not this problem. However, I am not so certain the drafters of RSA chapter 273-A intended today's result, so I write separately to point out that the matter is one for further legislative scrutiny.