Public Employee Labor Relations Board.
No. 87-376 ·

## Appeal of University System of New Hampshire
### (New Hampshire Public Employee Labor Relations Board)

December 30, 1988

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester, and *Morgan, Brown & Joy*, of Boston, Massachusetts (*Joseph A. Millimet* and *Nicholas DiGiovanni* on the brief, and *Mr. DiGiovanni* orally), for the University System of New Hampshire.

*Clark, Cook & Molan P.A.*, of Concord (*Richard E. Molan* and *Robert T. Clark* on the brief, and *Mr. Clark* orally), for the International Association of Firefighters, Local 2253.

THAYER, J. This is an appeal, under RSA chapter 541, by the University System of New Hampshire (UNH) from the public employee labor relations board's (PELRB) certification of a bargaining unit composed of the Durham-UNH firefighters and captains. For the reasons that follow, we affirm the PELRB's determination that the firefighters are an appropriate bargaining unit, but reverse its decision to include captains in that unit.

Local 2253 of the International Association of Firefighters (Union) filed a petition with the PELRB on January 16, 1987, seeking to represent a unit consisting of all full-time captains and firefighters in the Durham-UNH Fire Department. The proposed unit included sixteen employees of UNH, twelve firefighters and four captains. On February 2, 1987, UNH filed an exception to the union's petition and motion to dismiss, claiming that the proposed unit was an inappropriate fragment of a larger unit of all UNH operating staff, that the unit would be inefficient and, alternatively, that if the unit was approved, the captains should be excluded because they were supervisory and confidential employees under RSA chapter 273-A. The union objected, and the PELRB held hearings on April 15 and 22, 1987.

On June 23, 1987, the PELRB found that the proposed unit was appropriate. Its conclusion was founded on substantial differences which existed between the situation of the firefighters and that of other UNH operating staff, such as a variance in grievance procedure, location in leased facility, limited contact with other operating staff, control by the board of fire commissioners, and longer work hours. The PELRB also noted that the fire department functioned like the department of a municipality and that it was unique in its funding at UNH because one-third of its appropriations comes from the town of Durham. The PELRB also ruled that captains were not sufficiently vested with supervisory authority to be excluded from the firefighters' bargaining unit, because they spent the majority of their time working with, and performing the same duties as, firefighters.

UNH then filed a motion for a rehearing, which was denied. Shortly thereafter, an election was held, and the newly formed unit was certified as the exclusive representative of the Durham-UNH firefighters and captains. UNH filed a notice of appeal, and the union filed a motion for summary affirmance. This court denied the motion for summary affirmance and accepted this appeal.

UNH raises two issues on appeal: (1) whether the PELRB's determination that the Durham-UNH Fire Department constituted an appropriate bargaining unit was an error; and (2) whether the PELRB's decision to include captains in the unit was also error.

 UNH first asserts that the PELRB's determination that the Durham-UNH Fire Department was an appropriate bargaining unit was an error of law, unjust and unreasonable. In New Hampshire, the legislature has vested the PELRB with authority to define the terms of RSA chapter 273-A and to fill in any gaps in the statute. *Appeal of AFL–CIO Local 298*, 121 N.H. 944, 947, 437 A.2d 260, 262 (1981). Additionally, the PELRB has been given broad subject matter jurisdiction to determine and certify bargaining units to enforce the provisions of that chapter. *Appeal of SAU #21*, 126 N.H. 95, 97, 489 A.2d 112, 113 (1985). Although the PELRB is subject to our review, its findings of fact in collective bargaining matters, though not controlling, are deemed *prima facie* lawful and reasonable. *Appeal of Town of Pelham*, 124 N.H. 131, 135, 469 A.2d 1295, 1297 (1983).

██ Accordingly, we will not disturb the PELRB's ruling unless the appealing party satisfies its burden of demonstrating that the determination of the board was erroneous as a matter of law, unjust, or unreasonable. RSA 541:13; *Appeal of Manchester Bd.*

*of School Comm.*, 129 N.H. 151, 152–53, 523 A.2d 114, 115 (1987). Thus, "'[i]n reviewing a decision of the [PELRB], a court must consider both the facts found and the application of the relevant statute. . . .'" *N.H. Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.*, 117 N.H. 976, 977, 380 A.2d 1085, 1086 (1977) (quoting *E. I. duPont de Nemours & Co. v. Collins*, 432 U.S. 46, 54 (1977)).

The board is guided in its determination of an appropriate bargaining unit by RSA 273-A:8 and PELRB Rule § 302.02. RSA 273-A:8 provides that, in making its determination, the PELRB should consider the principle of community of interest. The statute provides in pertinent part:

> "The community of interest may be exhibited by one or more of the following criteria, although it is not limited to such:
>
> (a) Employees with the same conditions of employment;
>
> (b) Employees with a history of workable and acceptable collective negotiations;
>
> (c) Employees in the same historic craft or profession;
>
> (d) Employees functioning within the same organizational unit."

RSA 273-A:8. In addition, PELRB Rule § 302.02 provides that, when considering the community of interest, the PELRB may consider, in addition to the statutory elements:

> "the geographic location of the proposed unit, the presence or absence of common work rules and personnel practices, common salary and fringe benefit structures, the self-felt community of interest among employees, and the potential for a division of loyalties between the public employer and the employee's exclusive representative on the part of the employees within the proposed bargaining unit. In addition to considering the principle of community of interest, the board may also consider the effect of forming any particular bargaining unit in the efficiency of government operations."

N.H. ADMIN. RULES, Pub 302.02.

 Accordingly, "[t]he principal consideration in determining an appropriate bargaining unit is whether there exists a community of interest 'in working conditions such that it is reasonable for the employees to negotiate jointly.'" *Appeal of the University System of N.H.*, 120 N.H. 853, 855, 424 A.2d 194, 196 (1980) (quoting *University System v. State*, 117 N.H. 96, 100, 369

A.2d 1139, 1140 (1977)). In construing "community of interest," we consider such factors as "skills, duties, working conditions and benefits of the employees, the organizational structures of the employer, and the extent to which the work is integrated." *University System v. State, supra* at 99–100, 369 A.2d at 1140.

Based upon the evidence presented, the PELRB made the following findings of fact, *inter alia*:

"2. All employees of the Durham-UNH Fire Department share a community of interest in that they receive the same or similar wages; work the same number of hours; and, enjoy the same conditions of employment. They are all employed in the same historic craft; function within a single organizational unit; and, evidenced a very strong self-felt community of interest for the purposes of organizing under the collective bargaining statute.

3. Evidence further showed that a substantial difference exists between employees of the Durham-UNH Fire Department and other operating staff personnel at the University; i.e., grievance process appeal to final and binding decision rests with the Board of Fire Commissioners, as opposed to appeal of other operating staff to the Board of Trustees of the University; the Fire Department is a leased facility by the Town of Durham and the firefighters the only employees working out of that facility with limited contact with other University operating staff. The firefighters also work a longer workweek—42 hours per week and are not paid for shift differentials.

4. The Executive Head of the Fire Department is the Board of Fire Commissioners with direct supervision provided by the Fire Chief; University personnel are under the jurisdiction of the Board of Trustees and the Chancellor.

5. Although there is no question that the firefighters are University employees, working under the same personnel policies, they function like all other departments in any municipality, under the Department's own rules and regulations.

6. The University is unique in the funding for the operations of the Durham-UNH Fire Department in that they must follow a separate budget process with the Town of Durham appropriating one-third and the University

two-thirds of the funds necessary for the operations of the Department.

. . . .

10. As in the case of PPOM [Physical Plant Operations and Maintenance Department, *see Appeal of the University System of N.H.*, 120 N.H. 853, 424 A.2d 194], the Board finds that the proposed unit is the appropriate unit and grants the petition filed by Local 2253, IAFF.

11. As is PPOM, however, 'this decision is not to be read to indicate that every group of employees who perceive a community of interest, or wish to have an election as a distinct group apart from a previously established larger group, may do so. It is confined to its facts and circumstances. The Board will continue to guard against fracturing units and the resulting inefficiencies which can result.'"

Accordingly, the PELRB determined that an appropriate bargaining unit consisted of the Durham-UNH Fire Department, and ordered that an election be held as expeditiously as possible.

UNH asserts that the PELRB had previously found all UNH operating staff, including firefighters, to be an appropriate bargaining unit and that, under RSA chapter 273-A, the PELRB cannot nullify its prior determination absent compelling evidence that the circumstances have changed so that a smaller unit is now appropriate. UNH premises its argument on the language of RSA 273-A:8, which requires that the PELRB "determine *the* appropriate bargaining unit," and compares this language to the National Labor Relations Act (NLRA), under which the National Labor Relations Board is to find only "*a* unit appropriate for [bargaining]." 29 U.S.C. § 159(a) (emphasis added). UNH contends that there is no compelling evidence of changed circumstances to warrant a regrouping of firefighters into a smaller unit.

We find no merit in UNH's argument that the firefighters were part of a larger union and that changed circumstances must exist to change the unit determination. We first note that although section 159(a) of the NLRA mentions "*a* unit appropriate for such purposes," section 159(b), which is the pertinent provision for bargaining unit determinations, provides that "[t]he Board shall decide . . . *the* unit appropriate for the purposes of collective bargaining . . . ." 29 U.S.C. § 159(b) (emphasis added). In addition, UNH asserts that the PELRB's determination in *State Employees Association v. University System*, PELRB Case No. S-0318 (Oct. 26,

1976), placed the firefighters in a broad unit comprised of all operating staff. A review of that decision indicates, however, that the fire department was specifically excluded from that bargaining unit. More importantly, the statute does not foreclose the PELRB from making a redetermination of a unit. Rather, the statute has been interpreted as giving the PELRB broad subject matter jurisdiction to determine and certify bargaining units. *Appeal of SAU #21,* 126 N.H. at 97, 489 A.2d at 113.

UNH further argues that even if the PELRB was not bound by its prior decision, its decision to make firefighters a bargaining unit was unjust and unreasonable, and contrary to the clear preponderance of the evidence. UNH claims that the PELRB's bargaining unit decision has no basis in the record and is contrary to well established principles of unit determination required by RSA 273-A:8 and PELRB Rule § 302.02. It asserts that the "community of interest" factors which unite the firefighters also extend to the other operating staff on campus. UNH further argues that there is no substantial difference between firefighters and other operating staff, and that the firefighters' connection to the town of Durham is irrelevant. UNH claims that if this decision is allowed to stand, it will continue the PELRB's disturbing trend towards creating a proliferation of bargaining units, thus creating inefficiency in government operation.

What UNH misunderstands, however, is that the statutory and regulatory framework which guides PELRB decisions is flexible, and gives much discretion to the PELRB's expertise. The statute and regulation in question require only that certain factors *may* be considered in determining whether a community of interest exists. UNH ignores the fact that, under the statute and regulation, the PELRB need not find each criterion satisfied in order to find that a community of interest exists.

The PELRB's findings and the record of the proceedings indicate that, although operating staff and firefighters share many common personnel policies and benefits, there is a community of interest which exists among the firefighters because of their historic craft or profession, the type of duties they perform, and the conditions of employment they share. In addition, there are sufficient differences between the operating staff and the firefighters, such as the firefighters' grievance procedure, work week, and affiliation with the town, and the role of the board of fire commissioners, to warrant a separate bargaining unit. Furthermore, with regard to UNH's claim that the PELRB's decision will create inefficiency in government operation, we note that the PELRB rules provide that

the PELRB *may* take this factor into account, but is not required to. *See* N.H. ADMIN. RULES, Pub 302.02. It is also apparent from the PELRB's findings of fact that it considered this factor in making its decision, and because we find no clear abuse of discretion, we will not substitute our judgment for the PELRB's. *Appeal of University System of N.H.*, 120 N.H. at 855, 424 A.2d at 196.

■ The decision of the PELRB that firefighters share a community of interest is based on evidence in the record and constitutes a reasonable interpretation and application of RSA 273-A:8 and Rule 302.02. We cannot say that the ruling was erroneous or constituted a clear abuse of discretion and, therefore, will not substitute our judgment for that of the PELRB. *Id.* We therefore affirm the PELRB's determination that the Durham-UNH Fire Department was an appropriate bargaining unit.

■ Having found that the Durham-UNH Fire Department was an appropriate bargaining unit, we now address UNH's argument that the captains should be excluded from that bargaining unit. RSA 273-A:8, II requires that "[p]ersons exercising supervisory authority involving the significant exercise of discretion may not belong to the same bargaining unit as the employees they supervise." The legislature has vested the PELRB with primary authority to define the term "supervisory," *Appeal of City of Concord*, 123 N.H. 256, 257, 459 A.2d 285, 286 (1983); *N.H. Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.*, 117 N.H. at 978, 380 A.2d at 1086, and requires that supervisory employees remain separate from the employees they supervise "'to avoid conflicts between the two groups because of the differing duties and relationships which characterize each group.'" *Appeal of Manchester Bd. of School Comm.*, 129 N.H. at 153, 523 A.2d at 115 (quoting *City of Concord v. PELRB*, 119 N.H. 725, 726, 407 A.2d 363, 364 (1979)). Although the PELRB's determination will not be overturned unless it is erroneous as a matter of law, or unjust or unreasonable, *Appeal of Manchester Bd. of School Comm.*, 129 N.H. at 152–53, 523 A.2d at 115, "this court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." *Id.* at 152, 523 A.2d at 115.

Regarding the inclusion of the captains in the bargaining unit, the PELRB made the following findings of fact, *inter alia*:

"7. *CAPTAINS*: Captains spend the majority of their time working alongside and performing the same duties as that of firefighters; they work under the same rules and

departmental policy; and, although the captains do evaluate firefighters and recommend actions, their recommendations are not key to their adoption.

8. Captains have limited supervisory authority over firefighters involving significant discretion or independent judgment and that authority and supervision is not substantial enough to merit exclusion from the proposed unit."

Accordingly, the PELRB held that the captains should be part of the firefighters' bargaining unit.

 The PELRB's findings indicate that the captains evaluate the firefighters and recommend action in accordance with the evaluation. The record indicates that the captains' evaluations are given certain weight in merit pay increases for the firefighters, and were considered in terminating a new employee who was not progressing satisfactorily. In addition, it has become the practice of the fire department that the captains jointly interview and rate candidates for employment. Furthermore, PELRB finding number 8 indicates that the captains have some limited supervisory authority over the firefighters, including significant discretion or independent judgment which would, under a clear reading of RSA 275-A:8, II, preclude the captains from belonging to the same bargaining unit. The record indicates that the supervisory authority includes assigning work, ensuring that the shifts are fully staffed, and being in command of fire and other incidents when senior staff are not present. The captains also have certain disciplinary authority. They have the authority to send a firefighter home with pay if they believe the firefighter is unfit for duty, and they also have authority to issue warnings. Based upon the record as a whole and the PELRB's findings, we hold that as a matter of law the captains qualify as supervisors under the statute and, therefore, should be excluded from the bargaining unit.

Central to our decision are the evaluations performed by the captains, their supervisory authority, and their disciplinary authority. The mere fact that they have such authority, regardless of whether it is presently exercised, is sufficient for us to hold that they are supervisors under the statute. Given the responsibilities of the captains and firefighters, there is a strong potential for a conflict of interest to arise between the two groups. *See id.* at 153, 523 A.2d at 115. "[I]t is not necessary for us to sit by and 'allow events to unfold to the extent that the disruption of the [fire department] and the destruction of working relationships is

manifest before taking action.'" *Id.* at 154, 523 A.2d at 115 (quoting *Vicksburg Firef. Etc. v. City of Vicksburg, Miss.*, 761 F.2d 1036, 1040 (5th Cir. 1985)). Accordingly, because of the different duties and relationships of the captains and firefighters, there is a definite potential for conflict, and we hold, as a matter of law, that the captains should not be included in the bargaining unit. *See Appeal of Manchester Bd. of School Comm., supra* at 153, 523 A.2d at 115.

*Affirmed in part and reversed in part.*

All concurred.