Public Employee Labor Relations Board
No. 89-132

APPEAL OF SULLIVAN COUNTY NURSING HOME
(New Hampshire Public Employee Labor Relations Board)

July 18, 1990

*Wadleigh, Starr, Peters, Dunn and Chiesa,* of Manchester *Alan Hall & a.* on the brief, and *Mr. Hall* orally), for the Sullivan County Nursing Home.

*Craig & Wenners P.A.,* of Manchester (*Vincent A. Wenners, Jr.,* and *Scott L. Hood* on the brief, and *Mr. Wenners* orally), for American Federation of State, County, and Municipal Employees, Council 93.

PER CURIAM. The Sullivan County Nursing Home (Sullivan), a public employer, appeals from several rulings of the New Hampshire Public Employee Labor Relations Board (PELRB) made in anticipation of an election called in response to an employees' petition to decertify the respondent American Federation of State, County and Municipal Employees, Council 93 (AFSCME), the then-exclusive bargaining representative of Sullivan's employees. Sullivan claims that the PELRB erred as a matter of law and abused its discretion in limiting Sullivan's participation at two pre-election proceedings and in denying Sullivan's request to station an observer at the election itself. We affirm.

On January 2, 1988, certain employees of Sullivan filed a petition with the PELRB to decertify AFSCME. N.H. ADMIN. RULES, Pub 301.04. AFSCME moved to dismiss the petition on the grounds, *inter alia,* that the employees had failed to submit a sufficient number

of signature cards to comply with PELRB decertification procedure, and that the petition had been prompted by illegal participation from management. Apparently in response, Sullivan filed a motion "to be made a party to the proceedings relating to and arising out of" the petition.

After a hearing on the petition, the PELRB ruled on March 24 with respect to Sullivan's motion that "decertification is a matter between the employees and the Union [that] represents them," but, because AFSCME had alleged illegal management involvement, allowed counsel for Sullivan "to appear as a witness [at the hearing] to protect the interests [of Sullivan] with the introduction of necessary testimony and evidence," PELRB Decision No. 88-32. In his concurring opinion, labor representative Daniel Toomey noted that Sullivan's counsel had "not only acted as a witness [at the hearing] . . . but [had] cross-examined the petitioning employees and [had] otherwise acted as an attorney. . . ." Regarding AFSCME's motion to dismiss, the PELRB found, *inter alia*, that the Sullivan employees had conformed to all decertification requirements and that AFSCME had presented no evidence at the hearing in support of its allegation of illegal management participation.

The PELRB also acted upon the decertification petition itself on March 24, and, apparently because AFSCME had failed to prove its charge of illegal management participation, denied Sullivan's motion to participate as a "party" to subsequent decertification proceedings, including the employees' election. The following day, representatives of the petitioning employees, AFSCME, and Sullivan attended a pre-election conference, at which the PELRB apparently limited Sullivan's participation to its submission of an employee list. Consequently, Sullivan claims, it was unable to question that day's PELRB rulings concerning the voting eligibility of several groups of Sullivan employees. In addition, the PELRB denied Sullivan's request to station an employer observer at the election.

The decertification election was held on April 15, without Sullivan's participation, and the petition to decertify was defeated by a vote of 95–45. The PELRB rejected Sullivan's subsequent motion to set aside the election as well as its request for a new decertification proceedings, reiterating that

> "the [decertification] process is a matter between the employees and their exclusive representative and the employer's involvement in that process is limited to providing accurate lists of employees, and on-site facilities for the im-

partial and fair secret ballot election free of prejudice and possible influence from any employer representative or observer during the process."

On appeal, Sullivan argues that the PELRB rulings limiting its participation at the pre-election proceedings and rejecting its request for an employer election observer violated the PELRB's own regulations, and that, because these limitations prevented Sullivan from raising, and, consequently, from preserving for appeal, issues of interest to it, they violated its State constitutional right to due process, N.H. CONST. pt. I, art. 15, and its statutory right to intervene, RSA 541-A:17 (Supp. 1989). Although we find that Sullivan has not shown prejudice by any of the PELRB rulings, and for this reason affirm them, we will address the merits of Sullivan's claims in the interest of clarifying the boundaries of the PELRB's authority to limit the participation of affected public employers at decertification proceedings.

We will consider first the PELRB ruling denying Sullivan status as an election observer. PELRB regulation Pub 303.07(b) states that

"[e]ach party to the [union] election may, if it chooses, be represented at the polling places by one (1) representative for the purpose of observing the conduct of the election and the count of the ballots. Employer representatives shall not be on the list of eligible voters and shall not be supervisors of the persons voting."

Whether or not this provision obligated the PELRB to allow Sullivan an election observer depends on the answer to two questions of regulatory interpretation: first, does the term "election" refer to decertification elections, and second, is a public employer a "party to the election" within the meaning of Pub 303.07(b)?

The question of whether or not Pub 303.07(b) applies to decertification proceedings presents some difficulty. Pub 303.07(b) does not itself limit its application to certification elections, and thus appears on its face to apply to decertification elections as well. Unfortunately, however, related PELRB regulations cloud the issue by providing support for both broad and narrow applications of Pub 303.07(b). *See, e.g.*, Pub 303.01, 301.04.

■■ Nonetheless, as neither the parties to this appeal nor the PELRB has provided us an adequate basis upon which to distinguish between decertification and certification elections for the purpose of construing Pub 303.07(b), we will not read such a distinction into Pub

303.07(b). While we recognize that the PELRB generally has discretion to interpret and apply its own rules as it sees fit, *cf. Appeal of University Systems of N.H*, 131 N.H. 368, 370, 553 A.2d 770, 771 (1988) (PELRB has authority to define terms of its enabling legislation and to fill in gaps left by it), it must do so consistently; absent a clearly articulated rationale for doing so, it would be an abuse of discretion for the PELRB to treat public employers differently depending on the type of union election at issue. In ruling that Sullivan would not be permitted an observer at the election, the PELRB reasoned, without elaboration, that a decertification election is "a matter between the employees and the Union," but did not explain why this statement is any less true of a certification election, and thus provided no reasonable basis for such a distinction.

■ AFSCME claims that the public employer's interests are substantially more at stake in a certification election than in a decertification election, essentially because a union's contract, according to the respondent, remains in force for its stated duration even after it is decertified. Thus, argues AFSCME, since a decertification election does not immediately change the *status quo*, the employer has little or no interest in participating in the decertification election, but does have a substantial interest with respect to certification proceedings, which potentially alter the *status quo* immediately (from no union to union representation). This argument, however, is without merit since the respondent appears to ignore the fact that the public employer does have a substantial interest in whether or not, or by whom, its employees will be represented once the current union contract expires, an issue that, according to the respondent's own argument, is affected by decertification elections. Thus, the respondent has failed to persuade us that the PELRB justifiably exercised its discretion in distinguishing in this respect between certification and decertification elections. If, therefore, a public employer is a "party to the election" under Pub 303.07(b), then it would be entitled to an observer regardless of whether a certification or a decertification election is at issue.

■ ■ While we can infer from the second sentence of Pub 303.07(b) that there exist at least some circumstances under which a public employer is a "party to the election," neither the PELRB regulations, nor the New Hampshire Administrative Procedure Act, nor any other authority cited by the parties, specify those circumstances. We will therefore assume, since it is within the discretion of the PELRB to fashion its own rules to fill in the gaps left by its

enabling legislation, *see Appeal of University System of N.H. supra,* that it may exercise its discretion in determining who is a "party" to a given election. It follows from the reasoning above, however, that if it is PELRB practice, as the parties to this appeal apparently have assumed it is, to allow an affected public employer an observer at certification elections by finding it to be a "party to the election" pursuant to Pub 303.07(b), then it would be an abuse of discretion, absent a clearly articulated rationale for doing so, for the PELRB to deny a public employer the same status, and, consequently, the right to an observer, at decertification elections. We are unable, however, to determine whether or not such an abuse of discretion took place in this case because we cannot ascertain from the record whether or not it is PELRB practice to grant public employers "party" status at certification elections.

Turning to Sullivan's contention that the PELRB impermissibly limited its participation at the pre-election proceedings, we find that the PELRB complied with regulatory, statutory and constitutional guidelines in arriving at these decisions. Sullivan, once again, however, has made out at least a *prima facie* case that the PELRB abused its discretion in so ruling.

PELRB regulations apparently allow the "affected public employer" to file exceptions to a decertification or certification petition, *see* Pub 301.04(a), 301.01(c). They are silent, however, with respect to the level of participation afforded it at the pre-election proceedings themselves. Thus, as far as its own regulations are concerned, the PELRB apparently has discretion to limit the participation of public employers at such proceedings. *See Appeal of University System of N.H.,* 131 N.H. 368, 370, 553 A.2d 770, 771 (1988).

Similarly, the New Hampshire Administrative Procedure Act allows parties whose "rights, duties, privileges, immunities or other substantial interests may be affected by [an administrative] proceeding," RSA 541-A:17, I(b) (Supp. 1989), to intervene, subject to the caveat that

> "the presiding officer may impose conditions upon the intervenor's participation in the proceedings. . . . Such conditions may include but are not limited to: (a) Limitation of the intervenor's participation to designated issues in which the intervenor has a particular interest. . . ; (b) Limitation of the intervenor's use of cross-examination and other procedures. . . ."

RSA 541-A:17, III (Supp. 1989).

■ At both the pre-election conference and the decertification hearing at issue in this case, the presiding PELRB officer limited Sullivan's participation to the extent he determined necessary to protect Sullivan's interests. Thus, the presiding officer acted in conformity with the requirements of RSA 541-A:17 (Supp. 1989) and the PELRB regulations. Consequently, and as Sullivan does not claim that the PELRB acted pursuant to unconstitutional statutory authority, we do not find any merit in Sullivan's claimed due process violation, *cf. Appeal of Beyer*, 122 N.H. 934, 940, 453 A.2d 834, 837 (1982) (administrative agency did not violate due process by continuing hearing after withdrawal of complainants, since agency acted pursuant to statutory authority).

As we noted above with regard to the election observer issue, however, the PELRB failed in this case to articulate a rational basis upon which to distinguish between certification and decertification proceedings when exercising its discretion to limit the participation of public employers. Thus, if we assume, as have the parties to this appeal, that Sullivan would have been afforded greater participation had the proceedings at issue concerned certification of an employee organization, then the PELRB's rulings limiting Sullivan's participation at these pre-election proceedings constituted an abuse of discretion. Once again, however, we are unable to resolve this issue because the record does not clearly indicate whether or not such a distinction exists in PELRB practice.

■ In any event, Sullivan has failed to show that it was prejudiced by any of the PELRB's rulings in this case. As Sullivan appears to admit in its appellate brief, it cannot demonstrate that the PELRB's decisions limiting its participation in the pre-election proceedings and denying its request for an election observer affected the outcome of the election, and thus has failed to provide us an adequate reason to set it aside.

*Affirmed.*

HORTON, J., did not sit.