Public Employee Labor Relations Board
No. 90-545

## Appeal of City of Laconia

### (New Hampshire Public Employee Labor Relations Board)

March 25, 1992

*Burke & Baillargeon*, of Gilford (*James L. Burke* on the brief and orally), for the City of Laconia.

*Michael C. Reynolds*, of Concord, by brief and orally, for the State Employees Association of N.H., Inc., S.E.I.U., Local 1984.

Brock, C.J. The City of Laconia (City) appeals the New Hampshire Public Employee Labor Relation Board's (PELRB) decision to include the personnel director's administrative secretary as a member of a newly formed bargaining unit, as proposed by the State Employees Association of N.H., S.E.I.U., Local 1984 (SEA). For the reasons set forth below, we reverse.

On March 5, 1990, the SEA filed a petition for certification of a proposed bargaining unit to be composed of employees from various departments of the City of Laconia. Although the parties agreed that the position of executive secretary was confidential and, thus, excluded from the bargaining unit, there was a dispute over whether the administrative secretary should also be deemed a confidential employee. Following a hearing, the PELRB decided that the personnel director's administrative secretary, Ms. Barbara Mattson, would be included in the bargaining unit. The City's motion for rehearing and reconsideration was denied.

On appeal, the City argues that the administrative secretary should be excluded from the unit because she "assists and acts in a

confidential capacity to a manager who is intimately involved in labor negotiations." The SEA stipulated at the hearing that the personnel director, Mr. O'Neil, is "deeply involved in collective bargaining throughout the City of Laconia." The City alleges, and the SEA does not dispute, that Mr. O'Neil's job as the City's chief negotiator includes the formulation and effectuation of management policy. The SEA, on the other hand, argues that the Board's decision is supported by the evidence in the record, and must be upheld. The issue is whether the PELRB erred as a matter of law when it ruled that the administrative secretary was not a "confidential" employee pursuant to RSA 273-A:8 and :1, IX(c).

In *N.H. Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.*, 117 N.H. 976, 380 A.2d 1085 (1977), we concluded that the definition of "confidentiality" had been left to the PELRB by the legislature, and we remanded for such a determination. On remand, the Board determined that the term "confidential employees," as applied to proposed members of a collective bargaining unit,

> "are those [employees] who have access to confidential information *with respect to labor relations*, negotiations, significant personnel decisions and the like. The Board further finds that the number of such employees in any department or other unit of government must be large enough to enable the labor relations activities of the Department and the personnel activities of the Department to be carried on, but must not be so numerous as to deny employees who are entitled to the rights and benefits of R.S.A. 273-A those rights merely on the assertion that they might somehow be connected with activities related to labor relations."

*State of New Hampshire, Dept. of Rev. Administration v. State Employees' Ass'n*, Decision No. 780001 at 5 (PELRB Jan. 1978). Subsequent decisions by the PELRB have relied on this definition as a starting point, but have concluded that each case must be decided on its own facts. *See, e.g., Keene State College PAT Staff Ass'n v. University of N.H.; Keene State College*, Decision No. 780007 at 2 (PELRB Feb. 23, 1978). Although the Board has explicitly advised against strict adherence to one particular rule or set of guidelines, the Board's past rulings are enlightening, and may be used for guidance when reviewing a particular case. *Id.*

In the case before us, the PELRB ruled that "confidential" employees were "only those employees who act in a confidential capacity to persons who formulate management policies in the field of

labor relations or who regularly have access to confidential information concerning anticipated changes resulting from collective bargaining negotiations." Using this definition of "confidential," which is not disputed by the parties, the PELRB ruled that the administrative secretary should be part of the bargaining unit.

■ "If the PELRB's decision represents a reasonable interpretation of RSA 273-A:8[ ], and a reasonable application of that statute to the facts of the case, and if it is supported by evidence in the record, we will uphold it." *Appeal of the Bow School District,* 134 N.H. 64, 67–68, 588 A.2d 366, 368–69 (1991) (citing *University System v. State,* 117 N.H. 96, 100–01, 369 A.2d 1139, 1141 (1977)). The moving party on appeal has a heavy burden, for absent a showing that the PELRB's determination was erroneous as a matter of law, unjust or unreasonable, we will uphold the Board's ruling. RSA 541:13; *see University System v. State,* 117 N.H. 96, 101, 369 A.2d 1139, 1141 (1977) (Board's decision accorded prima facie validity). In this case, however, the City has met its burden; thus the PELRB's ruling must be reversed.

The PELRB relied on evidence indicating that the administrative secretary was responsible for preparing "wage surveys, benefit surveys, [and] requesting information from other communities regarding the types of employment contracts" in concluding that the position was not confidential. While this "merely statistical" data may be public, non-confidential information, there was additional uncontroverted testimony regarding the confidentiality of the position that must be considered. In light of all the evidence before the Board, we conclude that its decision was unreasonable.

Mr. O'Neil, the personnel director, testified that his administrative secretary is privy to his personal thoughts about the collective bargaining process. He often discusses "strategies relative to the process" with his staff, including Ms. Mattson. He further testified that Ms. Mattson has seen "the notes and prepared the information that [Mr. O'Neil] would present before the City's position ever became public," and she opens all inter-departmental communications, including those involving labor negotiation strategies and tactics between the city manager and Mr. O'Neil.

To require Mr. O'Neil, the City's chief labor negotiator, to work in a situation where he must keep secrets from his secretary regarding a significant part of his work is both unjust and unreasonable. The fact that labor negotiations may only be a portion of his work does not negate the fact that he must rely on his secretary to type notes

and confidential communications to other labor negotiators of the City. *See Keene State College PAT Staff Ass'n v. University of N.H., Keene State College,* Decision No. 780007 at 6 (PELRB Feb. 23, 1978) ("percentage of person's time spent on confidential matters is not crucial to a finding of confidentiality"); Memorandum from Evelyn C. LeBrun, Executive Director of the PELRB to the Public Employee Labor Relations Board, *Definition of "Supervisor" and "Confidential" under 273-A* at 10 (1978) (reprinted in Appendix to brief of the City of Laconia) (percentages of time spent on confidential functions should not be part of any test or rule to determine confidentiality).

The SEA further asserts that one confidential employee is sufficient for a bargaining unit of this size. We disagree. There is no set minimum or maximum number of employees who may be deemed confidential.

> "[T]he number of . . . employees in any department or other unit of government must be large enough to enable the labor relations activities of the Department and the personnel activities of the Department to be carried on, but must not be so numerous as to deny employees who are entitled to the rights and benefits of R.S.A. 273-A those rights merely on the assertion that they might somehow be connected with activities related to labor relations."

*State of New Hampshire, Dept. of Rev. Administration v. State Employees' Ass'n,* Decision No. 780001 at 5 (PELRB Jan. 1978). "The numbers of excluded employees should be sufficient in number to allow the public employer to perform its personnel and labor relations functions without hindrance because of a lack of executive or stenographic support personnel." *Keene State College PAT Staff Ass'n, supra* at 6.

In the case at bar, only one employee's position is in dispute. While it is true that the PELRB attempts to include as many employees as possible when defining a bargaining unit, Memorandum from Evelyn C. LeBrun, *supra* at 10, the fact remains that this employee plays a vital role in the City's labor negotiation preparation. Mr. O'Neil relies on his secretary to prepare confidential materials relative to the labor negotiation process. In addition, the city manager testified that his secretary, who had already been deemed the sole confidential employee of the proposed unit, would "not be able to produce any other document for any office outside of [his own]." To allow Ms. Mattson to partake in union activities would undoubtedly hinder Mr. O'Neil's

performance as chief labor negotiator, for her position "goes to the heart of [Mr. O'Neil's] abilities to prepare for and conduct labor relations and labor negotiations."

Therefore, after a thorough review of the record, we conclude that the City has met its burden of proving by a clear preponderance of the evidence, RSA 541:13, that the PELRB's ruling that the position of administrative secretary is not "confidential" is unjust and unreasonable. Accordingly, we reverse the decision below and exclude the position of administrative secretary from the bargaining unit.

*Reversed.*

All concurred.