Public Employee Labor Relations Board
No. 94-305

## APPEAL OF TOWN OF NEWPORT

(New Hampshire Public Employee Labor Relations Board)

October 27, 1995

*Kidder & Upton,* of Laconia (*Bradley F. Kidder* on the brief and orally), for the Town of Newport.

*Craig, Wenners, Craig & Casinghino, P.A.,* of Manchester (*Vincent A. Wenners, Jr.* on the brief and orally), for AFSCME, Council No. 93.

*H. Bernard Waugh, Jr.,* of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae.*

JOHNSON, J. The Town of Newport (town) appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) to include certain employees within a new bargaining unit proposed by AFSCME, Council 93 (AFSCME). We reverse.

In April 1991, AFSCME filed a petition for certification of a proposed bargaining unit to be composed of twenty-three full-time and part-time employees in the town's highway, cemetery, recreation, water & sewer, and fire departments. The town timely filed exceptions to the petition, objecting to the inclusion of supervisors and the employees they supervise in the same bargaining unit. The town also objected to the inclusion of employees from different disciplines and crafts because they lacked a community of interest in their labor relations.

Thereafter, AFSCME withdrew its request to include part-time employees in the bargaining unit. The PELRB first ordered the creation of a bargaining unit of all full-time employees of the town except the fire chief, the deputy fire chief, and the superintendent of highways:

> A unit is hereby created which includes all full-time employees of the Town of Newport, namely: working foreman, head mechanic, mechanic, clerk, truck drivers/equipment operators, laborers, utility technician, sewage treatment operator, fire fighters, fire lieutenant[s], superintendent water and sewer and superintendent of

cemetery and grounds. *Excluded* from the unit: Fire Chief, Deputy Chief and Superintendent of Highways.

In October 1991, the PELRB issued a corrected decision, deleting mention of the firefighters, who were part-time employees, and including the position of "Superintendent Sewage Treatment Plant." The exclusions remained the same.

The town appealed. Following oral argument, we remanded the case to the PELRB "for proceedings at which it may further consider making findings to support its ultimate decision and order in this case." No further hearing was held. In April 1993, the PELRB issued a supplemental decision that included twelve findings of fact and several conclusions of law. This decision included within the bargaining unit the deputy fire chief, who previously had been specifically excluded.

On appeal, the town argues that the PELRB erred by including in the proposed bargaining unit: (1) the department of public works' secretary, who acts in a confidential capacity to the person who manages the bargaining unit employees and who has access to information concerning negotiations with the bargaining unit; (2) three superintendents in the department of public works, who exercise supervisory authority involving the significant exercise of discretion over other members of the bargaining unit; (3) fire lieutenants, who lack a community of interest in labor relations with the other employees; and (4) the deputy fire chief, who exercises supervisory authority and lacks a community of interest. The town also argues that the PELRB erred by waiving the statutory time limits of RSA 273-A:3, II(a) (1987).

To succeed on appeal, the town must show that the PELRB decision is unlawful or clearly unreasonable.

> [A]ll findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (1974); *see also Appeal of State of N.H.*, 138 N.H. 716, 719-20, 647 A.2d 1302, 1305 (1994). "It is not the function of this court to engage in a *de novo* review of the evidence in PELRB determinations, but we have consistently required record support for its decisions," *Appeal of Bow School District*, 134 N.H. 64, 71, 588 A.2d 366, 371 (1991) (quotations, citations and brackets omit-

ted), and we will reverse the PELRB's decision "if the record fails to support findings necessary to the determinations," *id.*

■ The town first argues that the PELRB erred by including in the bargaining unit a secretary in the department of public works who acts in a confidential capacity to the director of public works, the person who manages most of the employees who would be included in the bargaining unit. "Persons whose duties imply a confidential relationship to the public employer" are excluded from the definition of "public employee," RSA 273-A:1, IX (1987), and thus are ineligible for membership in the bargaining unit, *see* RSA 273-A:8 (1987); *Appeal of City of Laconia*, 135 N.H. 421, 423-24, 605 A.2d 225, 227 (1992).

The PELRB found "no evidence" that the employee, whose job description is entitled "department secretary,"

> is involved in confidential matters related to labor relations although she does attend staff meetings and handle personnel matters. The applicable job description calls for this employee to "perform highly responsible secretarial work, develop office procedures and answer routine inquiries." This employee is required to act independently, exercise judgment and utilize tact in matters requiring the department head's attention. This employee is not required to exercise any supervisory control over subordinates.

(Citations omitted.) Based upon this finding, the PELRB included the department secretary in the bargaining unit:

> The secretary/clerk has no privy or confidential relationship to the public employer (RSA 273-A:1 IX) nor any supervisory authority under RSA 273-A:8 II. The Town is not prejudiced or inconvenienced by this position being in the unit since the Town Manager's secretary is responsible for all clerical functions associated with collective bargaining. The position is INCLUDED.

■ In light of all of the evidence before the PELRB, we conclude that its decision was unreasonable. *See* RSA 541:13. The PELRB's conclusion fails to consider evidence, including uncontroverted testimony, regarding the confidential relationship the department secretary has with the director of public works.

According to her job description, the department secretary

> [w]orks under the general supervision of an administrative superior or department head who outlines departmental policy, makes work assignments, and evaluates work in

terms of effectiveness of results. Performs duties with some degree of independence, exercising judgment and tact in answering inquiries and determining correct courses of action in matters warranting department head's attention.

Floyd Roberts, the director of public works, testified that he considered the department secretary to be his "administrative assistant." Mr. Roberts stated that the department secretary keeps the personnel records, is privy to any disciplinary actions taken, and attends staff meetings at which confidential matters are discussed. No bargaining unit existed at the time of the PELRB hearing, and thus there were no labor relations or negotiations, but Mr. Roberts testified that if the proposed bargaining unit was created, the department secretary might be put in a situation where her loyalties would be divided between the union and the town. In addition, Dan O'Neill, the town manager, testified that while the bulk of the town's labor negotiations are done through his office, the department secretary will be gathering "confidential information," and "putting strategies together to pass up the line" to his office in future labor relations and negotiations.

This evidence makes the PELRB's finding unreasonable. *See* RSA 541:13. In *Appeal of City of Laconia,* 135 N.H. at 423-24, 605 A.2d at 227, we excluded an administrative secretary position with a job description and duties very similar to this one:

The PELRB relied on evidence indicating that the administrative secretary was responsible for preparing wage surveys, benefit surveys, and requesting information from other communities regarding the types of employment contracts in concluding that the position was not confidential. While this merely statistical data may be public, non-confidential information, there was additional uncontroverted testimony regarding the confidentiality of the position that must be considered. In light of all the evidence before the Board, we conclude that its decision was unreasonable.

Mr. O'Neil, the personnel director, testified that his administrative secretary is privy to his personal thoughts about the collective bargaining process. He often discusses strategies relative to the process with his staff, including the administrative secretary. He further testified that his administrative secretary has seen the notes and prepared the information that Mr. O'Neil would present before the City's position ever became public, and she opens all

inter-departmental communications, including those involving labor negotiation strategies and tactics between the city manager and Mr. O'Neil.

To require Mr. O'Neil, the City's chief labor negotiator, to work in a situation where he must keep secrets from his secretary regarding a significant part of his work is both unjust and unreasonable. The fact that labor negotiations may be only a portion of his work does not negate the fact that he must rely on his secretary to type notes and confidential communications to other labor negotiators of the City.

*Id.* (quotations and brackets omitted). We find the department secretary position is not sufficiently distinguishable from the administrative secretary position in *Appeal of City of Laconia* to warrant inclusion in the bargaining unit. Accordingly, we reverse the PELRB's decision to include it.

 The town next contends that the PELRB erred by including the town's water and sewer superintendent, the cemetery and grounds superintendent, and the wastewater treatment plant superintendent, because they exercise supervisory authority involving the significant exercise of discretion over other members of the bargaining unit. RSA 273-A:8, II states in pertinent part that "[p]ersons exercising supervisory authority involving the significant exercise of discretion may not belong to the same bargaining unit as the employees they supervise."

The PELRB made extensive findings of fact with respect to each of the three superintendent positions.

The Water and Sewer Superintendent is charged with administering and supervising all water and wastewater activities including the operation, maintenance, repair and construction of all municipal water and wastewater systems. He works under the general supervision of the Director of Public Works, an exempt position. In addition to supervising and scheduling the crew and offering instruction and training for them, he is actively involved in the "hands on" functions of the division. This includes inspecting contractors' work on town systems, installing, maintaining and repairing water and sewer lines, operating equipment (e.g., loader and back hoe) in construction projects, and reading, installing and repairing water meters. He assists the technicians, approves their time cards and schedules vacations. He is not replaced by another super-

visor when he is on vacation. He makes recommendations as to hirings, firings and discipline, subject to the approval of the Director of Public Works or higher authority. He has authority to approve departmental purchases to $1,000.

... The Superintendent of Cemeteries and Grounds is responsible for the management of six town cemeteries, 211½ acres of grounds and parks, and four ball fields. He is required to plan, organize and make work assignments for staff personnel consisting of one full time employee and welfare recipients assigned by the town. He is responsible for equipment maintenance, preparation of the division's budget, requisitioning supplies and equipment, and maintaining records of purchases, burials, foundations and entombments.

... The Superintendent of the Sewage Treatment Plant, also known as the Wastewater Treatment Plant Superintendent, is responsible for directing and supervising the operation and maintenance of the municipal wastewater treatment plant. There are two employees at the plant, the Superintendent and an operator both of whom possess the same qualifications as operators. He is responsible for collection and testing (bacteriological and chemical) of samples, recording results, and forwarding reports to state and federal authorities[.] As such he is more of a technician than the two previous superintendents and deals with the "actual operation of the facility." He is responsible for preparing and submitting a budget and has limited spending authority. He works along with other employees, supervising the "servicing and repair of plant equipment and machinery, and ensures that safety regulations are followed."

(Citations omitted.)

Based on these findings, the PELRB concluded that the three superintendent positions should be included in the bargaining unit:

All three superintendent positions under consideration function in the role of a lead employee within their respective divisions. All three are responsible for the functioning of their divisions and devote a significant portion of their work time to the actual performance of functions or "hands on" tasks associated with the operation of those divisions. They do the work of their divisions with administrative duties being an extra responsibility of the job title. None

exercises the "significant exercise of discretion" referenced in RSA 273-A:8 II to make them exempt as a supervisor. That level of authority is reserved to the Director of Public Works or higher. There is no justification to exempt any of them from the unit. The Water and Sewer Superintendent, Cemetery and Grounds Superintendent and Sewage Treatment Plant Superintendent positions are INCLUDED.

In light of all of the evidence before the PELRB, we conclude that its decision to include the three superintendents was unreasonable. The PELRB's conclusion fails to consider evidence, including uncontroverted testimony, regarding the superintendents' supervisory authority over their employees. *See* RSA 541:13.

According to the water and sewer superintendent's job description, the superintendent

[w]orks under the general supervision of the Director of Public Works. Consultation occurs when major problems develop regarding legal, personnel, public relations, budgetary or operations areas. Carries out daily activities independently.. . . Schedules and assigns work to crew, instructs employees on methods of operation; ensures safety measures are utilized; checks work performed to ensure accuracy and thoroughness. Evaluates employees on quality of work performed, and makes recommendations to supervisor regarding employee hiring, retention, and dismissal.

The job description lists examples of the superintendent's duties, including the selection, dismissal, and discipline of employees, "subject to approval by the Director of Public Works."

Uncontroverted testimony shows that the superintendent of water and sewer is considered a supervisor by his employees, interviews potential employees, recommends the hiring of his subordinates to the town manager, and is responsible for disciplinary action. When the director of public works was asked whether he "would . . . foresee as a serious problem if the superintendent from the sewer and water department were part of a bargaining unit," he testified that he thought that "any supervisor that is in a position to discipline should not be part of any body that [he] would feel an obligation to either way[;] they should be totally neutral."

The job description for the superintendent of cemetery and grounds provides that the superintendent

[e]xercises general supervision over all assigned employees. Provides general policy guidance and ensures goals and

objectives of the division are addressed and achieved. Evaluates employees' quali[t]y of work performed and makes recommendations to supervisor regarding employee hiring, retention and dismissal. [In addition, he] [p]lans, organizes, and makes work assignments for all staff personnel. Approves leave requests; evaluates performance of subordinates; selects, dismisses, and disciplines employees subject to approval by the Director of Public Works.

At the PELRB hearing, an employee testified that he considers the superintendent to be his supervisor, and the director of public works testified that the superintendent was responsible for any disciplinary action within the cemetery and grounds department.

The wastewater treatment plant superintendent's job description states that the superintendent "[e]xercises general supervision over employees assigned to the municipal wastewater treatment plant. Assigns work, instructs employee[s] on current procedures, and supervises work of subordinate[s] on a periodic basis. Evaluates employees on quality of work performed, and makes recommendations to supervisor regarding employee hiring, retention, and dismissal." The director of public works offered uncontroverted testimony that the superintendent has the same supervisory responsibilities as the superintendents of water and sewer and cemetery and grounds.

In light of this evidence, we find that by including the three superintendents, the PELRB failed to follow the standards set forth in *Appeal of University System of New Hampshire*, 131 N.H. 368, 376, 553 A.2d 770, 775 (1988). That decision involved fire captains who "evaluate[d] the firefighters and recommend[ed] action in accordance with the evaluation," whose "evaluations [we]re given certain weight in merit pay increases for the firefighters, and were considered in terminating a new employee who was not progressing satisfactorily," who "jointly interview[ed] and rate[d] candidates for employment," and who "ha[d] some limited supervisory authority over the firefighters, including significant discretion or independent judgment." *Id.* We ruled that based on this evidence, the fire captains were precluded under RSA 275-A:8, II from belonging to the same bargaining unit as the firefighters they supervised. *Appeal of University System of N.H.*, 131 N.H. at 376, 553 A.2d at 775. We further noted that

> [t]he record indicates that the supervisory authority includes assigning work, ensuring that the shifts are fully staffed, and being in command of fire and other incidents when senior staff are not present. The captains also have

certain disciplinary authority. They have the authority to send a firefighter home with pay if they believe the firefighter is unfit for duty, and they also have the authority to issue warnings. . . .

Central to our decision are the evaluations performed by the captains, their supervisory authority, and their disciplinary authority. The mere fact that they have such authority, regardless of whether it is presently exercised, is sufficient for us to hold that they are supervisors under the statute. Given the responsibilities of the captains and firefighters, there is a strong potential for a conflict of interest to arise between the two groups.

*Id.* We do not find the superintendents in the present case to be sufficiently distinguishable from the fire captains in *Appeal of University System of New Hampshire* to warrant inclusion. The PELRB decision to include the superintendents in the bargaining unit was unreasonable and erroneous as a matter of law, and we hold that they should be excluded. *See Appeal of East Derry Fire Precinct,* 137 N.H. 607, 609-10, 631 A.2d 918, 919 (1993). We note that these determinations are made on a case by case basis, and that "some employees performing supervisory functions in accordance with professional norms will not be vested with the supervisory authority involving the significant exercise of discretion described by RSA 273-A:8, II." *Id.* at 611, 631 A.2d at 920 (quotation omitted).

The town next argues that there was insufficient evidence of a community of interest to include fire lieutenants in the bargaining unit. "The principal consideration in determining an appropriate bargaining unit is whether there exists a community of interest in working conditions such that it is reasonable for the employees to negotiate jointly." *Appeal of the University System of N.H.,* 120 N.H. 853, 855, 424 A.2d 194, 196 (1980) (quotation omitted). RSA 273-A:8, I, provides that the required

community of interest may be exhibited by one or more of the following criteria, although it is not limited to such:
(a) Employees with the same conditions of employment;
(b) Employees with a history of workable and acceptable collective negotiations;
(c) Employees in the same historic craft or profession;
(d) Employees functioning within the same organizational unit.

In addition, the PELRB may consider

(1) the geographic location of the proposed unit, (2) the presence or absence of . . . common work rules and personnel practices and . . . common salary and fringe benefit structures, (3) the self-felt community of interest among employees, and (4) the potential for a division of loyalties between the public employer and the employee's exclusive representative on the part of employees within the proposed bargaining unit. . . . In addition to considering the principle of community of interest, the board may also consider the effect of forming any particular bargaining unit on the efficiency of government operations . . . .

N.H. ADMIN. RULES, Pub 302.02. Essentially, "[i]n construing community of interest, we consider such factors as skills, duties, working conditions and benefits of the employees, the organizational structures of the employer, and the extent to which the work is integrated." *Appeal of University System of N.H.*, 131 N.H. at 372, 553 A.2d at 772 (quotations omitted).

■ The PELRB made the following findings of fact regarding the fire lieutenants:

"Fire lieutenants" are permanent employees of the fire department. They are three in number and, along with the Deputy Chief, are known as "house men" and are permanent, regular employees who lead each shift. All other fire fighters are on a call basis and, accordingly are not eligible for collective bargaining under RSA 273-A:1 IX (d). Thus, the fire lieutenants and deputy chief have no supervisees. Fire lieutenants complete a daily check list on the engine, clean the station, inclusive of windows and bathroom, run monthly training, and usually drive the truck to fire scenes. They work rotating schedules and have the same fringe benefits (vacations and insurance) as public works employees. In the absence of a senior officer (Chief or Deputy Chief), the lieutenant runs the fire scene and directs post fire operations on scene and at the station. While the job description speaks to the lieutenant's evaluating performance and recommending hiring and discipline of assigned personnel, we find that those subordinate personnel are not public employees within the meaning of RSA 273-A:1 X. Even if "assigned personnel" were "public employees," the lieutenant's role and function would be that of a working foreman under his responsibilities to 1) conduct training sessions, 2) conduct hose testing, 3) keep records, 4)

formulate fire plans, 5) drive or direct others to drive or operate fire equipment, and 6) respond to fires and emergency calls.

(Citations omitted.) The PELRB concluded that the fire lieutenants should be included in the proposed bargaining unit because they "are full time line employees of the fire department," who function as "'house men' and lead employees on each of four rotating shifts," and have no "supervisees who are public employees."

The PELRB's findings do not provide a sufficient basis upon which to conclude that the firefighters have a community of interest in their "working conditions such that it is reasonable for the employees to negotiate jointly." *Appeal of the University System of N.H.*, 120 N.H. at 855, 424 A.2d at 196 (quotation omitted). The PELRB *must* consider the principle of community of interest, although "under the statute and regulation, the PELRB need not find each criterion satisfied in order to find that a community of interest exists." *Appeal of University System of N.H.*, 131 N.H. at 374, 553 A.2d at 774.

The PELRB made no express finding or conclusion of law with respect to the community of interest of the firefighters and the other employees, although it did conclude generally that "[a]ll employees share a similarity of benefits and work for the same employer." In addition, we note that the PELRB's original decision stated that "[i]n small towns, of which New Hampshire has many, all employees of the town have a self-felt community of interest, all work and are paid by the same employer . . . ."

The record, however, reveals that other than sharing a common employer, the fire lieutenants have little in common with the other employees proposed for certification in the bargaining unit. At the PELRB hearing, one of the town's full-time firefighters testified that the work schedule of the firefighters differs from that of other town employees. The firefighters' work weeks are typically in excess of forty hours; they consist of eleven-hour days and thirteen-hour nights, usually with four days off, whereas most town employees have a traditional work week with two days off. Moreover, for at least the past six years, the firefighters have worked under a fire department collective bargaining agreement, although it has expired and they are operating under the doctrine of the status quo until a new agreement is signed or they are included in the bargaining unit at issue. *See Appeal of Milton School Dist.*, 137 N.H. 240, 247, 625 A.2d 1056, 1061 (1993).

We conclude that despite the PELRB's finding of a self-felt community of interest, the record does not support a conclusion that

the fire lieutenants share a community of interest sufficient for it to be "reasonable for the employees to negotiate jointly." *Appeal of the University System of N.H.*, 120 N.H. at 855, 424 A.2d at 196.

We reach the same result with respect to the deputy fire chief. Based on our holding that the fire lieutenants did not share a sufficient community of interest with the rest of the employees proposed for certification, we conclude that the deputy fire chief also is ineligible for inclusion.

The final issue on appeal is the town's argument that the PELRB acted unreasonably or illegally by waiving the statutory time limit of RSA 273-A:3, II(a), which requires written notice of a party's intention to bargain to be served on the other party at least 120 days before the town's budget submission date. The town failed to raise this issue in its notice of appeal or to subsequently add the question, and we decline to address it here. SUP. CT. R. 10(1)(c), 16(3)(b); *Appeal of Toczko*, 136 N.H. 480, 487, 618 A.2d 800, 804-05 (1992).

*Reversed.*

HORTON, J.,dissented; the others concurred.