Public Employee Labor Relations Board
No. 95-821

APPEAL OF THE TIMBERLANE REGIONAL SCHOOL BOARD

(New Hampshire Public Employee Labor Relations Board)

May 29, 1998

*Theodore E. Comstock*, of Concord, N.H. School Boards Association Legal Assistance Fund, by brief and orally, for the petitioner.

*Krasner Professional Association*, of Farmington (*Emmanuel Krasner* on the brief and orally), for respondent Timberlane Teachers' Association.

JOHNSON, J. The petitioner, the Timberlane Regional School Board (board), appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) that the board committed an unfair labor practice, *see* RSA 273-A:5 (I)(e), (g), (h) (1987), when it failed to pay teacher salaries as set forth in its collective bargaining agreement (CBA) with the respondent, the Timberlane Teachers' Association (association). We affirm.

This dispute centers upon salary terms included in a CBA covering the three school years between 1993-1996. After more than a year of negotiating, the parties reached a tentative agreement in December 1993 outlining the salary increases under the CBA. The tentative agreement stated that the allocations for salary increases would amount to $233,533 for the 1993-1994 school year, $404,985 for the 1994-1995 school year, and $520,015 for the 1995-1996 school year. Both parties agreed, however, that because the 1993-1994 school year had commenced, the 1993-1994 increase would be paid in one lump sum in July 1994, after the annual school district meeting scheduled for March 1994. Both parties subsequently ratified the tentative agreement. A warrant article, prepared by the board and approved by the voters in March 1994, authorized the appropriation of sums to fund increased costs associated with the CBA. The association prepared, and the board subsequently accepted, a CBA that included salary schedules for the 1993-1996 school years. These schedules reflected the association's understanding that the increases were to be cumulative, *e.g.*, the July 1994 lump sum payment for school year 1993-1994 would be included in the teachers' base salary upon which the subsequent year's (1994-1995) increase would be added. Although the board agreed that the CBA is valid and that the board received the salary schedules referenced above, it asserted that the July 1994 lump sum payment was a one-time "bonus," and that the 1994-1995 raises were to be added to salaries paid during the 1992-1993 school year. The teachers' contracts for the 1994-1995 school year issued in June 1994 reflected the board's understanding of the CBA.

The association filed an unfair labor practice complaint with the PELRB. The complaint alleged, *inter alia*, that the board unlawfully refused to pay the 1994-95 salaries as called for in the CBA. In response, the board filed a cross-complaint alleging that the association committed an unfair labor practice "[b]y repudiating the

salary levels which the parties negotiated and ratified, and which the voters approved." After four days of hearings, the PELRB ruled in favor of the association and dismissed the board's cross-complaint. The PELRB ordered the board to pay the teachers the equivalent of the July 1994 lump sum payment which, the PELRB ruled, should have been included in their 1994-1995 base salary. Notably, there was no dispute as to the appropriate 1995-1996 salary schedule, since the board agreed that teacher salaries to be paid that year included cumulative increases for all three years of the CBA. This appeal followed.

On appeal, the board contends that the PELRB erred in ruling that it was obligated to treat the July 1994 payment as a raise because there was no meeting of the minds as to the cumulative nature of the 1993-1994 increase, and that the increase, if cumulative, never received proper voter approval. The board also asserts that the PELRB erred in failing to make necessary rulings of law.

■ Our review of the PELRB's decision is governed by RSA 541:13 (1997). *See Appeal of Alton School Dist.*, 140 N.H. 303, 308, 666 A.2d 937, 940 (1995). We defer to the PELRB's factual findings, which we deem to be *prima facie* lawful and reasonable. RSA 541:13; *see Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 772, 695 A.2d 647, 650 (1997). "As the appealing party, the school district must show that the PELRB's decision is contrary to law or, by a clear preponderance of the evidence, unjust or unreasonable." *Appeal of Londonderry School Dist.*, 142 N.H. 677, 680, 707 A.2d 137, 139 (1998); *see* RSA 541:13. "It is not the function of this court to engage in a *de novo* review of the evidence in PELRB determinations, but we have consistently required record support for its decisions." *Appeal of Town of Newport*, 140 N.H. 343, 345, 666 A.2d 954, 956-57 (1995) (quotation omitted).

■ The board first argues that the PELRB erred in finding that the July 1994 lump sum payment constituted a raise for the 1993-1994 school year and was not a non-recurring bonus. Although the board argues that there was no meeting of the minds relative to the July 1994 lump sum payment, arguably a material provision of the contract, *cf. Appeal of Sanborn Regional School Bd.*, 133 N.H. 513, 518, 579 A.2d 282, 284 (1990) (for an enforceable CBA to be formed a meeting of the minds as to its terms is required), it nonetheless asks this court to enforce the agreement "legally in effect" between the parties. Furthermore, during the proceedings below, the board consistently stated that the agreement was binding on both parties. Accordingly, we interpret the board's argument to

be that the PELRB erred in finding that the contract provided for a raise for 1993-1994, and not that the agreement itself is void. *Cf. Simonds v. City of Manchester*, 141 N.H. 742, 746, 693 A.2d 69, 72 (1997) (no employment contract existed where there was no meeting of the minds on its essential terms); 17A AM. JUR. 2D *Contracts* § 26, at 54 (1991) (no binding contract where there was no meeting of the minds on essential term).

■ "Collective bargaining agreements are construed in the same manner as other contracts . . . ." *Sanborn*, 133 N.H. at 518, 579 A.2d at 284. Generally, contract interpretation involves a question of law, reviewable *de novo* by this court. *Gamble v. University of New Hampshire*, 136 N.H. 9, 13, 610 A.2d 357, 360 (1992). Where, however, the fact finder has properly looked to extrinsic evidence to determine the meaning of a contract term, we defer to its findings. *See Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 235, 401 A.2d 201, 203 (1979).

■ We hold that there was ample evidence in the record to support the PELRB's ruling that the July 1994 lump sum payment constituted a raise. Numerous witnesses, including a former member of the school board, testified that the July 1994 lump sum payment was a raise and not a non-recurring bonus. The minutes of the board's budget committee meeting reflect that the superintendent of schools characterized the tentative agreement as providing for annual percentage increases for three years and not a one-time bonus followed by raises for the school years from 1994 through 1996. Furthermore, neither the board's press release regarding the CBA, nor its internal memorandum, states that the July 1994 lump sum payment was intended to be a non-recurring bonus. Finally, testimony and the actual appendices to the CBA showed that the increases were intended to be cumulative. Although the board presented witnesses who claimed that it had agreed to pay only a non-recurring bonus in July 1994, our task is not to reweigh the evidence, but to ascertain whether the PELRB's factual findings are supported by competent evidence. *See Appeal of Town of Newport*, 140 N.H. at 345, 666 A.2d at 956-57. Accordingly, we affirm the ruling of the PELRB that the July 1994 lump sum payment was intended to be a raise and not a one-time bonus.

■ The board next argues that the PELRB's order is erroneous because the voters at the annual school district meeting never approved the funds necessary to pay the 1994 raise. We have held that

in cases involving school districts, the local school board acts as an agent for the public employer during negotiations. It lacks, however, the authority to appropriate public dollars, and therefore, a CBA negotiated by a school board and a union remains unenforceable until the legislative body of the public employer ratifies the CBA's cost items.

*Alton*, 140 N.H. at 306-07, 666 A.2d at 940; *see* RSA 273-A:3, II(b) (1987). Accordingly, neither party to a CBA is bound by a negotiated cost item unless the legislative body approves that cost item with full knowledge of its terms. *Alton*, 140 N.H. at 307, 666 A.2d at 940. "The PELRB determines in the first instance whether the requisite knowledge exists as a matter of fact." *Id.*

On March 5, 1994, the district voters approved warrant article 3 at the annual school district meeting authorizing the appropriation of $727,372 to "fund the cost items associated with years one and two (1993-95) of a three-year agreement" with the association. The warrant article further authorized an appropriation of $572,629 "to be put in the 1995-96 budget to fund the cost items associated with year three (1995-96) of a three-year agreement" with the association. One of the school board's representatives testified that the numerical differences between the tentative agreement and article 3 reflect the inclusion of certain fixed costs in article 3 and certain changes in staff. In addition, the voters approved warrant article 4, which authorized the district "to raise and appropriate, in addition to money appropriated under prior warrant articles, for the payment of salaries of School District officials and agents and for the support of schools." Essentially, article 4 reflected the district's budget excluding the cost of the CBA.

The board asserts that because the sums the voters approved in article 3 are sufficient only if the July 1994 lump sum payment is a one-time bonus, the PELRB cannot bind the board to a CBA which requires the July 1994 lump sum payment to be added to the 1993-1994 base salaries for purposes of calculating salaries for 1994-1995. The association argues that article 3, when read in conjunction with article 4, provides for sufficient funding because article 3 alerts voters to the annual increases each year under the three-year CBA, and article 4, by referencing the 1994-1995 budget, contained "funds for the balance of salaries for the academic year 1994-95."

The PELRB found, as a matter of fact, that "[t]he voters at the Timberlane Regional School District meeting held on March 5, 1994 voted to fund the 1993-95 portions of the new CBA." "Ratification

requires full knowledge of a CBA's cost items. The party alleging ratification must, at a minimum, demonstrate that the legislative body knew of the cost items' financial implications at the time it approved them." *Alton*, 140 N.H. at 312, 666 A.2d at 943 (quotation and citation omitted). Accordingly, we must determine whether the record supports the implicit factual finding that the voters were aware that article 3 covered only annual increases under the CBA and that the figures for 1993-95 contained in article 3 must be added cumulatively to the budget provided in article 4 to arrive at the appropriate funding levels for the 1994-1995 academic year. *See Alton*, 140 N.H. at 313, 666 A.2d at 944 (ratification requires that legislative body have a reasonable degree of knowledge of the extent of the cost item's financial burden).

■ We hold that the evidence presented to the PELRB supports such a finding. Namely, a handout provided to voters at the annual district meeting by the board entitled "cost of negotiations package" shows that the salary increases were to be added cumulatively each year of the CBA. Again, although board witnesses testified that the July 1994 lump sum payment was presented to the voters as a one-time bonus, we must uphold the factual findings of the PELRB if supported by the record. *See Newport*, 140 N.H. at 345, 666 A.2d at 956-57; RSA 541:13.

■ The board next argues that the PELRB erred by failing to make *any* rulings of law and by failing to rule on a specific proposed ruling. RSA 273-A:6, IX (Supp. 1997) provides: "Any order issued by the board shall contain findings of fact and rulings of law on which the order is based." *See* N.H. ADMIN. RULES, Pub 304.06. The purpose of this requirement is to allow this court to have an adequate basis on which to review the decision of the PELRB. *See Magrauth v. Magrauth*, 136 N.H. 757, 760-61, 622 A.2d 837, 838 (1993). As long as the PELRB makes rulings of law sufficient to support its ultimate decision and provide for adequate appellate review, it is under no obligation to respond specifically to either party's requested rulings of law. *See id.* at 760, 622 A.2d at 838 (superior court not required to rule on parties' requests for findings and rulings as long as decision sufficiently recites basis for decision); *cf. Appeal of N.H. Dept. of Employment Security*, 140 N.H. 703, 710-11, 672 A.2d 697, 702 (1996) (under RSA 541-A:35 (1997), agency need only rule on proposed findings of fact if administrative rules call for their submission).

The board's claim that the PELRB failed to make any legal rulings is simply without basis in the record. The PELRB's order

was lengthy and included seven single-spaced pages of factual findings and several legal rulings that are sufficiently detailed to allow us to decide the issues before us.

The board also claims it was error for the PELRB not to rule on a specific proposed ruling of law that "the only legal manner in which the board could proceed with any additional payments of salaries for the 1993-95 segment of the [CBA] would be to present such increases to voters" in light of the PELRB's remedial mandate that the board pay the disputed increases "forthwith." The board fails to appreciate, however, that such a ruling is unnecessary given that the PELRB properly concluded that the increases in question were approved by the voters at the March 1994 district meeting. As such, the PELRB is merely ordering enforcement of a valid CBA, and we find no error.

*Affirmed.*

All concurred.