Public Employee Labor Relations Board
No. 2011-538

APPEAL OF TOWN OF MOULTONBOROUGH
(New Hampshire Public Employee Labor Relations Board)

Argued: April 5, 2012
Opinion Issued: October 16, 2012

*Nolan Perroni Harrington, LLP*, of Lowell, Massachusetts (*Kevin E. Buck* on the brief and orally), for the petitioner.

*Rice Law Office, PLLC*, of Laconia (*Anne M. Rice* and *J. Kristen Gardiner* on the brief, and *Ms. Rice* orally), for the respondent.

CONBOY, J. The respondent, Town of Moultonborough (Town), appeals a decision of the New Hampshire Public Employee Labor Relations Board

(PELRB) granting a petition for certification filed by the petitioner, New England Police Benevolent Association, Inc. (NEPBA). We affirm in part, reverse in part, and remand.

In June 2010, the NEPBA filed a petition for certification of a proposed collective bargaining unit to be composed of "[a]ll sworn and non-sworn employees of the Town of Moultonborough Police Department excluding the Chief of Police." The proposed bargaining unit contained fourteen employees in seven different positions. The Town objected to the petition on the basis that RSA 273-A:8, I (2010) (amended 2011) requires a minimum of ten employees to form a bargaining unit, and that this requirement was not met because several of the positions were not statutorily eligible for inclusion. The Town argued that the executive assistant, communication specialist, and prosecutor positions, and a probationary employee lacked a "shared community of interest" with the remaining members of the proposed unit. The Town also argued that the executive assistant was a confidential employee, see RSA 273-A:1, IX(c) (2010), and that the sergeant and corporal positions were supervisory positions, see RSA 273-A:8, II (2010).

In January 2011, after an evidentiary hearing, a PELRB hearing officer certified a bargaining unit composed of the following positions: sergeant, corporal, master patrol officers, patrolman, executive assistant, and communication specialist/dispatcher. The hearing officer, acting for the PELRB, excluded the position of prosecutor, finding it lacked a community of interest with the other positions in the unit. She also excluded one "on call" communication specialist position. See RSA 273-A:1, IX(d) (2010) (exempting persons employed "on call" from the definition of "public employee").

The Town filed a motion to review the hearing officer's decision. The PELRB denied the motion and approved the hearing officer's decision. In a decision footnote, the board noted that the Town failed to include a "duly prepared transcript of the proceedings." See N.H. ADMIN. RULES, Pub 205.01(b). Subsequently, the Town moved for a rehearing, noting that the transcript of the proceeding was not attached to its electronic submission through "inadvertent error." The board denied the motion, and this appeal followed.

On appeal, the Town challenges the PELRB's inclusion in the bargaining unit of the corporal, sergeant, executive assistant, and communication specialist positions. "When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear

preponderance of the evidence that the order is unjust or unreasonable." *Appeal of State Employees' Assoc. of N.H.*, 156 N.H. 507, 508 (2007) (quotation omitted).

■ The principal consideration in determining a proper bargaining unit is whether there exists a community of interest in working conditions such that it is reasonable for the employees to negotiate jointly. *Appeal of the University System of N.H.*, 120 N.H. 853, 855 (1980). Pursuant to RSA 273-A:8, I, the PELRB must consider such criteria as similarity in conditions of employment, a history of workable and acceptable collective negotiations, and identity of organizational units. Further, PELRB regulations set forth additional factors for consideration, including: a common geographic location of the proposed unit, the presence or absence of common work rules and personnel practices, common salary and fringe benefit structures, and the potential for division of loyalties between the public employer and the employees' exclusive representative. N.H. ADMIN. RULES, Pub 302.02. In construing "community of interest," therefore, we consider such factors as skills, duties, working conditions, employee benefits, the organizational structures of the employer, and the extent to which the work is integrated. *Appeal of University System of N.H.*, 131 N.H. 368, 372 (1988) (quotations omitted).

Based upon the evidence presented at the hearing, the PELRB concluded that, with the exception of the position of prosecutor,

> [a]ll other employees in the proposed bargaining unit function within the same organizational unit and share a community of interest. They work for the same department in the field of law enforcement, work at the same building, and are covered by the same personnel rules, policies, and evaluation and grievance procedures. The members of the proposed unit interact with each other on [a] regular basis.

The Town first asserts that the PELRB erred in finding that there was a sufficient community of interest between the position of communication specialist and the other members of the bargaining unit. It argues that the "PELRB placed undue emphasis on the fact that only one condition needs to be present to support a finding for shared community of interest and, in doing so, ignored the reasonableness standard." In addition, it asserts that the board "made general findings regarding all employees of the proposed bargaining unit, but failed to provide a specific analysis . . . as to each category of employee."

■ The Town's assertions ignore the fact, however, that the statutory and regulatory framework that guides PELRB decisions is flexible, and gives

much discretion to the PELRB's expertise. *Appeal of University System of N.H.*, 131 N.H. at 374. Both the statute and regulation require only that certain factors *may* be considered in determining whether a community of interest exists. *See* RSA 273-A:8, I ("The community of interest may be exhibited by *one or more* of the following criteria, although it is not limited to such. . . ." (emphasis added)); *see also Appeal of Town of Newport*, 140 N.H. 343, 354 (1995). Thus, the PELRB need not find each criterion satisfied in order to find that a community of interest exists. *Appeal of University System of N.H.*, 131 N.H. at 374.

■ Moreover, the record does not support the Town's assertion that the PELRB ignored the reasonableness standard and placed undue emphasis on only one criterion in reaching its conclusion. The PELRB found that with the exception of the prosecutor, all other employees in the proposed bargaining unit function within the same organizational unit. *See* RSA 273-A:8, I(d). It also found that all of the employees, except the prosecutor, are covered by the Town's personnel policy and by the police department's rules and regulations. *See* N.H. ADMIN. RULES, Pub 302.02(b)(2)(a). In addition, the PELRB found that all of the employees work in a common geographic location, the Town's public safety building, and interact on a regular basis. *See* N.H. ADMIN. RULES, Pub 302.02(b)(1). Based upon these findings, which are supported by the record, we cannot say that the board's conclusion is unreasonable or unjust. "We will not, therefore, under the circumstances, substitute our judgment for that of the board on this issue." *Appeal of the University System of N.H.*, 120 N.H. at 855.

The Town next argues that the PELRB erred by failing to address its objection to the NEPBA's late inclusion of two part-time employees occupying the communication specialist position and one on-call communication specialist. The PELRB, however, implicitly overruled the Town's objection to any tardy amendment of the proposed bargaining unit's members by specifically addressing the communication specialist position on its merits. While the PELRB hearing officer found "insufficient evidence to establish that [a part-time] Communication Specialist/Dispatcher . . . is an irregular, seasonal, on call, or temporary employee within the meaning of RSA 273-A:1, IX(d) or should otherwise be excluded from the bargaining unit," and therefore included the position, the board construed the statute to exclude an "on call Communication Specialist/Dispatcher position." The Town's assertion of prejudice as a result of the PELRB's consideration of the position is unavailing: the Town fails to suggest how the result would have differed had the position been timely disclosed.

The Town next contends that the executive assistant position, a civilian position that is exempt from the training and certification requirements

applicable to other positions in the proposed bargaining unit, does not share in the community of interest. The Town also asserts that the PELRB failed to specifically address this argument, thus denying it the opportunity for a meaningful appeal. The PELRB concluded, however, that "all [positions other than the prosecutor position] function within the same organizational unit and share a community of interest." Thus, the record establishes that the PELRB did in fact consider whether the executive assistant position shared a community of interest with the other positions, and concluded that it did. As indicated above, the Town has not met its burden of establishing that the PELRB's determination that the included positions have a sufficient shared community of interest was "unlawful, or clearly unjust or unreasonable." *Appeal of Town of Deerfield,* 162 N.H. 601, 602 (2011).

█ Alternatively, the Town argues that the executive assistant position should be excluded from the bargaining unit because the executive assistant "acts in a confidential capacity in support of the Chief of Police, the person who manages most of the employees who would be included in the bargaining unit." "Confidential employees" are " 'those employees who have access to confidential information with respect to labor relations, negotiations, significant personnel decisions and the like.' " *Appeal of City of Laconia,* 135 N.H. 421, 422 (1992) (quotation, brackets and emphasis omitted) (quoting *State of New Hampshire Dept. of Rev. Administration v. State Employees' Ass'n,* Decision No. 780001, at 5 (PELRB Jan. 1978)). RSA 273-A:1, IX(c) excludes confidential employees from the definition of "public employee." Thus, confidential employees are ineligible for membership in the bargaining unit. *See Newport,* 140 N.H. at 346.

Regarding the executive assistant position, the PELRB found:

9. The Executive Assistant's duties set forth in the job description include the following:

1. Coordinates the daily general administration and clerical functions of the Police Department.

. . . .

8. Maintains all files for the Police Chief, except for confidential files.

. . . .

10. Personnel files are kept in a locked cabinet in the Chief's office. The Chief is the only person with the key to that cabinet. Any employee who wants to access a personnel file[] must request the Chief's permission.

11. Virginia Welch is the Executive Assistant. The Executive Assistant's office is next to the Dispatch office. Like a Communication Specialist/Dispatcher, she answers all phone calls, not only the phone calls directed to the Chief. The Executive Assistant enters payroll information into [the] computer system, conducts billing, handles worker's compensation reports, files arrest and accident reports, and sends bills to the finance department for payments. Payroll and benefits information is not placed in the personnel files. Ms. Welch does not file anything into the personnel files and has no access to the locked cabinet containing personnel files without the Chief's permission. She opens departmental mail unless it is marked "confidential." The Executive Assistant does not attend non-public meetings between the Chief and the Board of Selectmen.

Based upon these findings, the PELRB concluded that since "the Executive Assistant is not involved with personnel or other confidential labor relations matter[s] in any meaningful way," the position is not confidential.

In *Appeal of City of Laconia*, the PELRB ruled that an administrative secretary did not act in a confidential capacity. *City of Laconia*, 135 N.H. at 423. The PELRB's decision rested upon evidence that the administrative secretary was responsible for preparing wage and benefit surveys and for requesting information from other communities regarding the types of employment contracts. *Id.* Our review of the record, however, indicated that the administrative secretary was privy to the personnel director's personal thoughts, strategies, and notes about the collective bargaining process. *Id.* Moreover, the administrative secretary opened all inter-departmental communications, including those involving labor negotiation strategies between the city manager and the personnel director. *Id.* Accordingly, we concluded that it was unreasonable to require the personnel director, as the city's chief labor negotiator, to work under circumstances in which he must keep secrets from his secretary regarding a significant part of his work, and concluded that the position was confidential. *Id.*

We reached a similar conclusion in *Appeal of Town of Newport*. In *Newport*, the department secretary worked under the general supervision of the director of public works, an administrative superior who outlined departmental policy, made work assignments, and evaluated work in terms of effectiveness of results. *Town of Newport*, 140 N.H. at 346-47. Moreover, she maintained personnel records, was privy to disciplinary actions taken, and attended staff meetings at which confidential matters were discussed. *Id.* at 347. In addition, the director of public works testified that if a proposed bargaining unit was created, the department secretary might be

put in a situation in which her loyalties would be divided between the union and the town. *Id.* Based upon this evidence, we concluded that the department secretary position was not sufficiently distinguishable from the administrative secretary position that we found confidential in *Laconia* and, therefore, should be excluded from the proposed unit. *Id.* at 348.

*Laconia* and *Newport*, however, are distinguishable from this case. Unlike in *Newport*, in which the department secretary maintained personnel records, *Newport*, 140 N.H. at 347, here, the executive assistant does not maintain personnel files and only the chief has a key to the locked cabinet containing personnel files. Additionally, she does not attend staff meetings or non-public meetings between the chief and board of selectmen. *See id.* Moreover, although she receives all of the department mail, she does not open mail marked "confidential."

█ The Town's objection to the inclusion of the executive assistant position in the proposed bargaining unit rests largely upon conjecture regarding her role after the unit is certified. Whatever her potential role may be with regard to labor negotiations, the objection is premature. *See Plainfield Support Staff/NEA-New Hampshire v. Plainfield School District, SAU #32*, PELRB Decision No. 94-48, at 3 (PELRB June 21, 1995). Accordingly, we concur with the PELRB's conclusion that "the Executive Assistant is not involved with personnel or other confidential labor relations matter[s] in any meaningful way," and, therefore, should be included in the bargaining unit.

█ The Town next asserts that the PELRB erred in including the sergeants and the corporal because they exercise supervisory authority involving the significant exercise of discretion over other members of the bargaining unit. RSA 273-A:8, II provides in pertinent part that "[p]ersons exercising supervisory authority involving the significant exercise of discretion may not belong to the same bargaining unit as the employees they supervise." Although the PELRB's determination will not be overturned unless it is erroneous as a matter of law, or unjust or unreasonable, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Appeal of University System of N.H.*, 131 N.H. at 375.

The PELRB's findings of fact regarding the sergeants and the corporal included:

> 36. Sgt. Fulton has responsibilities in the area of the administrative and support services, the exact nature of which was not addressed in detail at the hearing. He also completes written evaluations of the Master Patrol Officer/Detective and the Master

Patrol Officer/School Resource Officer. Sgt. Fulton also conducts background checks of the candidates applying to fill open positions in the Department.

37. Sgt. Canfield is in charge of the Patrol Division and oversees use of force procedures. Use of force must be reported to the supervisors and the Chief using an appropriate form. Patrol Officers fill out Use of Force forms. The Sergeants or the Corporal review them and send them to the Chief. The Chief places them into the personnel files.

38. Sgt. Beede is responsible for scheduling and for processing leave requests. The Chief has overturned Sgt. Beede's decision regarding leave request[s] once. Sgt. Beede completes written evaluations of, and has authority to issue oral counseling to, the Communication Specialists/Dispatchers.

39. Patrol Sergeants complete written evaluations of a Corporal, Master Patrol Officers, and Patrol Officers. The Corporal has authority to complete written evaluations of, and to issue oral counseling to, the Dispatchers, Master Patrol Officers, and Patrol Officers.

. . . .

41. The Sergeants and the Corporal divide responsibilities for completing written evaluations. Neither Sergeants nor Corporal have authority to recommend pay increases, promotions, demotions, hiring, termination, or continued employment with the Department.

Based upon these findings, the PELRB concluded that the sergeant and the corporal positions should be included in the bargaining unit:

In the present case, the extent to which the Sergeants and the Corporal are involved in discipline, evaluation, and the hiring process, and the nature of their involvement do not rise to the level of the significant exercise of discretion that would warrant exclusion from the bargaining unit. For example, although the Sergeants and the Corporal complete annual evaluation forms for Patrol Officers and Communication Specialists/Dispatchers, there is insufficient evidence to prove that these forms are relied upon to determine pay increases, promotions, demotions, discipline or terminations. . . .

The Sergeants' and the Corporal's role in hiring is likewise relatively modest and is limited to the participation in oral boards and ranking candidates along with other employees, including Master Patrol Officers and the Prosecutor. . . . The degree of supervisory authority exercised by the Sergeants and the Corporal is not likely to create conflict within the proposed bargaining unit because of differing duties and relationships.

In *Appeal of University System of N.H.*, we held that the PELRB had incorrectly determined that fire captains were not supervisory employees. *University System of N.H.*, 131 N.H. at 376; *Appeal of East Derry Fire Precinct*, 137 N.H. 607, 610 (1993). We found three characteristics of the captains' jobs indicative of their supervisory authority: their authority to evaluate the firefighters, the nature of their supervisory roles, and their disciplinary authority. *Appeal of East Derry Fire Precinct*, 137 N.H. at 610. The captains evaluated the lower-ranking firefighters in the proposed unit, and their evaluations were given certain weight in merit pay increases and were considered in terminating new employees. *Appeal of University System of N.H.*, 131 N.H. at 376. Additionally, the captains jointly interviewed and rated candidates for employment. *Id.* Further, the captains' supervisory duties included assigning work and assuming command when senior staff was absent. *Id.* The captains were also authorized to issue warnings and send firefighters deemed unfit for duty home with pay. *Id.* Thus, given the authority and responsibilities of the captains, we held that there was a strong potential for a conflict of interest to arise with the firefighters. *Id.*

Here, the sergeants and the corporal positions are not sufficiently distinguishable from the captain positions in *University System* to warrant inclusion in the bargaining unit. As in *University System*, the sergeants and the corporal are authorized to evaluate subordinate officers in the proposed unit. The sergeants conduct yearly performance evaluations of the patrolmen and the corporal, which the chief "sign[s] off" on, adds to their personnel files, and distributes to the town administrator and the board of selectmen. The evaluations, like those in *University System*, are considered in determining step raises.

The sergeants and the corporal also have supervisory responsibility over the subordinate officers. The sergeants assign work, ensure full staffing on shifts, develop department rules, and assume the role of chief in his absence. *See id.* Moreover, as in *University System*, the sergeants and the corporal are involved in various aspects of the hiring process. *See id.*

As did the officers in *University System*, the sergeants and the corporal have certain disciplinary authority over subordinate officers. *See id.* The

sergeants are authorized to issue verbal warnings or written reprimands, which are documented in the employee's personnel file. Additionally, the sergeants may relieve an officer from duty, with pay, for certain infractions. The corporal also has disciplinary authority over subordinate officers. Like the sergeants, the corporal is authorized to issue verbal warnings, and written reprimands. Accordingly, in light of all of the evidence before the PELRB, we conclude that its decision to include the sergeant and the corporal positions was unreasonable.

Finally, the Town asserts that the PELRB erred in refusing to consider the chief's affidavit, which the Town attached both to its objection to the petition for certification and to its post-hearing brief. In a decision footnote, the hearing officer noted that the chief's affidavit was not admitted to the record because the record was closed. *See* N.H. ADMIN. RULES, Pub 203.06(a) ("After the conclusion of the hearing, the record shall be closed and no other evidence shall be received into the record, except as allowed by paragraphs (b) and (c) of this section."). The Town argues that this decision was erroneous because the affidavit was duly disclosed before the hearing, not after its conclusion: it asserts that the submission and disclosure of the chief's affidavit as part of the objection to the NEPBA's petition for certification makes the affidavit part of the record in the hearing on the petition for certification.

The Town does not contend that it submitted the affidavit at the hearing or offered it as an exhibit pursuant to New Hampshire Administrative Rules, Pub 203.03(c). The hearing officer noted that "no request to have the record open for the submission of additional evidence [after the hearing] was made." The Town thus bases its assertion that the affidavit constitutes part of the record solely upon the fact of its attachment to a pre-hearing pleading. When the Town filed its objection, however, the PELRB sent the Town's counsel an e-mail acknowledging receipt of the filing, but noting that "the exhibits [were] not yet part of the record in [the] case." The e-mail also stated, "You will be required to offer your exhibits into evidence at the time of the adjudicatory hearing." The Town, however, failed to offer the affidavit as an exhibit at the hearing or to request time to add the affidavit to the record after the hearing. Therefore, the PELRB sustainably exercised its discretion in refusing to admit the document.

Accordingly, we reverse the decision of the PELRB as to its inclusion of the sergeants and corporal in the bargaining unit, and affirm the remainder of its determinations. We make no ruling on the eligibility of the bargaining unit after exclusion of the sergeant and corporal positions.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.